**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

FRANCISCO MARCOS-QUIROGA,

        Defendant.

No. CR 06-3009-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANT'S *PRO SE* MOTION
FOR NEW ATTORNEY,
DEFENDANT'S OBJECTION TO
GUIDELINE FINDING OF CAREER
OFFENDER, AND COURT'S *SUA
SPONTE* RECONSIDERATION OF
DEFENDANT'S MOTION TO
WITHDRAW GUILTY PLEA**

_____

**TABLE OF CONTENTS**

**I. INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *A. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *B. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**II. LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    *A. Objection To Career Offender Status* . . . . . . . . . . . . . . . . . . . . . . 10
        *1. Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . 11
            *a. Marcos-Quiroga's argument* . . . . . . . . . . . . . . . 11
            *b. The government's response* . . . . . . . . . . . . . . . 12
        *2. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
            *a. Interplay of statutory and guidelines provisions* . . . . . 13
            *b. The alleged Sixth Amendment violation* . . . . . . . . . . 15
                *i. Violation of* **Cunningham v. California** . . . . . 15
                *ii. Violation of the right to jury determination* . . . . 16

     *c.* *Other prohibitions on "double counting"* . . . . . . . . . 19

   **3.**  *Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

  **B.** *Reconsideration Of Motion To Withdraw Guilty Plea* . . . . . . . . . . . 22

   **1.**  *Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . 22

   **2.**  *Applicable law* . . . . . . . . . . . . . . . . . . . . . . . . . . 23

     *a.* *Authority to reconsider* . . . . . . . . . . . . . . . . . . . . 23

     *b.* *Grounds to withdraw a guilty plea* . . . . . . . . . . . . . 24

   **3.**  *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

     *a.* *Ripeness of Marcos-Quiroga's ineffective-assistance*

       *claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

     *b.* *Timeliness of Marcos-Quiroga's claim* . . . . . . . . . . . 29

     *c.* *Marcos-Quiroga's entitlement to relief* . . . . . . . . . . 32

       *i.* *Deficient performance* . . . . . . . . . . . . . . . . 32

       *ii.* *Prejudice* . . . . . . . . . . . . . . . . . . . . . . . 42

       *iii.* *Other pertinent considerations* . . . . . . . . . . . 48

   **4.**  *Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

  **C.** *The Defendant's Motion For New Counsel* . . . . . . . . . . . . . . . . . . 50

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

Is a prior felony drug conviction impermissibly "double counted" when it is used both to enhance a statutory penalty under 21 U.S.C. §§ 841(b)(1)(B) and 851 and to enhance a guidelines sentence for a career offender under U.S.S.G. § 4B1.1? Do counsel's erroneous assurances that a defendant will not be sentenced as a career offender pursuant to U.S.S.G. § 4B1.1 constitute fair and just reasons to allow the defendant to withdraw his guilty plea? The court must address these and other issues in this case in which the defendant contends that he pleaded guilty to a drug-trafficking offense only after his attorney assured him that he did not qualify as a career offender under the guidelines. Although the court initially denied the defendant's

motion to withdraw his guilty plea based on bad advice from counsel, the court decided to reconsider that ruling *sua sponte* in conjunction with the defendant's *pro se* motion for new counsel and his attorney's objection to the recommendation in his presentence investigation report that he be sentenced as a career offender pursuant to U.S.S.G. § 4B1.1.

## I. INTRODUCTION

### A. Factual Background

According to factual stipulations in defendant Francisco Marcos-Quiroga's plea agreement, on September 21, 2005, police responded to a disturbance at a house in Mason City, Iowa. That house was within 1,000 feet of a playground called East Park. When police arrived, they found Marcos-Quiroga, his girlfriend, and her mother yelling at each other. The police officers persuaded the parties present to "break it up," and those individuals left the premises. As police officers were preparing to leave, however, they were approached by a neighbor who reported that he had seen Marcos-Quiroga drop a bag over the fence into the back yard just before police arrived on the scene. The police officers searched the area indicated by the neighbor and discovered a bag containing a white, chunky powder, $74 in cash, a green lighter, and a baggie containing some jewelry. An officer hid near the bag and, a short time later, Marcos-Quiroga approached the back of the house, having walked through the back yards of some of the neighboring houses. His car was later found parked approximately a half block away with the driver's door still open. When Marcos-Quiroga got within fifteen feet of the bag, the hidden officer announced his presence and questioned Marcos-Quiroga about why he was taking such a circuitous route to the house. Marcos-Quiroga offered no explanation. The police officers placed Marcos-Quiroga under arrest and a search incident to arrest revealed $3,501 in cash

3

on him. The white powder in the bag found at the scene later tested positive for 12.59 grams of 100% pure methamphetamine.

Marcos-Quiroga was charged with distribution of actual (pure) methamphetamine within 1,000 feet of a playground after having previously been convicted of a felony drug-trafficking offense. Marcos-Quiroga eventually agreed to plead guilty pursuant to a "non-cooperation" plea agreement in which he stipulated that he had knowingly possessed the methamphetamine, intending to distribute some or all of it to another person. He also stipulated that he had previously been convicted of a felony drug offense, specifically, delivery of cocaine, in the Iowa District Court for Cerro Gordo County, on or about June 12, 2000. In addition to the prior drug-trafficking conviction, Marcos-Quiroga and his counsel were aware prior to his guilty plea that Marcos-Quiroga had also been convicted in 1997 of a state misdemeanor offense for assault with intent to commit sexual abuse against a fourteen-year-old girl.

Marcos-Quiroga asserts, and the court finds, that Marcos-Quiroga's counsel specifically represented to him prior to his guilty plea and preparation of the presentence investigation report (PSIR) that he would *not* qualify as a career offender based on his 1997 misdemeanor assault conviction and his 2000 felony drug conviction and that, consequently, his sentencing range in this case would be no greater than the mandatory minimum sentence of ten years. The court finds, further, that the government's initial determination of the sentencing parameters and its submissions to the probation office agreed with Marcos-Quiroga's counsel's assessment. The court specifically finds that Marcos-Quiroga's decision to plead guilty to the offense charged in this case was based upon his counsel's assurance that he was not a career offender as a result of his previous felony drug conviction in 2000 and the misdemeanor assault conviction in 1997 and that, but for his counsel's advice, Marcos-Quiroga would not have pleaded guilty to the offense

4

charged in this case.  Finally, counsel has admitted giving the erroneous advice in question here.[1]

## B. Procedural Background

Marcos-Quiroga is the sole defendant charged in an Indictment handed down in this case on March 22, 2006.  The single charge in the Indictment is knowingly possessing with intent to distribute five grams or more of actual (pure) methamphetamine within 1,000 feet of a playground, having previously been convicted on or about June 12, 2000, of a felony drug offense, specifically, delivery of cocaine, in the Iowa District Court for Cerro Gordo County, all in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 851, and 860.  At an initial appearance and arraignment on March 31, 2006, at which Marcos-Quiroga was represented by an assistant federal defender, Marcos-Quiroga pleaded not guilty, and his trial was set for June 5, 2006.  Marcos-Quiroga was detained pending a hearing on the government's motion for detention made at Marcos-Quiroga's initial appearance.  After a detention hearing on April 5, 2006, Marcos-Quiroga was detained pending further proceedings.  Marcos-Quiroga then sought and received the first continuance of his trial to July 3, 2006, then a further continuance to a date certain of August 7, 2006.  Shortly after the second continuance, the assistant federal defender representing Marcos-Quiroga

---

[1]Indeed, current counsel is to be commended for the manner in which he "fell on his sword" by taking full responsibility for having improperly advised Marcos-Quiroga concerning the effect of the 1997 misdemeanor conviction for purposes of a career offender enhancement and for his diligent efforts to mitigate any prejudice to Marcos-Quiroga from that error, including filing a timely motion to withdraw Marcos-Quiroga's guilty plea and his forthright explanations of what happened.  The court has every confidence, based on its extensive experience with Marcos-Quiroga's current counsel, that the current situation arises from a very uncharacteristic lapse.  After all, we all make mistakes.

5

was allowed to withdraw owing to a conflict, and on June 15, 2006, new counsel was appointed to represent Marcos-Quiroga. On June 29, 2006, upon new counsel's motion, Marcos-Quiroga's trial was again continued, this time to October 30, 2006.

By order dated August 31, 2006 (docket no. 23), however, Marcos-Quiroga's trial was stricken and a change-of-plea hearing was scheduled for October 27, 2006. The change-of-plea hearing was subsequently rescheduled for October 25, 2006, and a sentencing hearing was set for January 19, 2007. On October 20, 2006, prior to the change-of-plea hearing, the government filed a Rule 11 letter dated July 19, 2006 (docket no. 26), which indicated that Marcos-Quiroga had entered into a plea agreement containing sufficient factual basis for a guilty plea. On October 25, 2006, Marcos-Quiroga filed a notice of consent to entry of a guilty plea before a magistrate judge (docket no. 28) and a consent to inspection of a presentence investigation report (PSIR) (docket no. 29) and then entered a plea of guilty before United States Magistrate Judge Paul A. Zoss.

At the plea hearing, the government offered Marcos-Quiroga's "non-cooperation" plea agreement, which stated, *inter alia*, that he acknowledged that he would not be eligible for any sentence reduction under 18 U.S.C. § 3553(e) or U.S.S.G. § 5K1.1 and would not be required to testify. The plea agreement also contained sentencing stipulations to a base offense level of 26 pursuant to U.S.S.G. § 2D1.1(a)(3), based on possession of at least 5 but less than 20 grams of actual (pure) methamphetamine; a two-level increase in his base offense level pursuant to U.S.S.G. § 2D1.2 for distribution of methamphetamine within 1,000 feet of a playground; and a two-level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), with the possibility of a further one-level reduction pursuant to U.S.S.G. § 3E1.1(b) if he continued to accept responsibility. The plea agreement contained the parties' stipulation that there were no other applicable upward or downward adjustments to Marcos-Quiroga's base offense level

6

under Chapters 2 or 3 of the Sentencing Guidelines and no grounds for an upward or downward departure or variance from the sentencing range. Judge Zoss filed a Report and Recommendation on October 25, 2006 (docket no. 30), recommending that the court accept Marcos-Quiroga's plea of guilty to the charge against him, and the undersigned accepted that Report and Recommendation, to which no objections had been filed, on November 13, 2006 (docket no. 31).

On January 8, 2007, however, Marcos-Quiroga filed a Motion To Withdraw Plea Of Guilty [And] Alternative Motion For Deviation Or Departure At Time Of Sentencing (docket no. 32). That motion was based on Marcos-Quiroga's contention that his counsel had incorrectly advised him that he could not be sentenced as a career offender pursuant to U.S.S.G. § 4B1.1 based on his prior convictions, but that the PSIR, nevertheless, recommended that he be sentenced as a career offender based on his 1997 state misdemeanor assault conviction (PSIR ¶ 39) and his 2000 state felony drug conviction (PSIR ¶ 50). Marcos-Quiroga also argued that using the 2000 conviction both to enhance his exposure to a potential life sentence, pursuant to 21 U.S.C. §§ 841(b)(1) and 851, and to establish is career offender status under the Sentencing Guidelines was impermissible "double counting" of the prior conviction to increase his sentencing exposure. In the alternative, if his motion to withdraw his guilty plea was denied, Marcos-Quiroga requested that the court consider a departure under U.S.S.G. §§ 5K2.0 and 4A1.3, on the ground that a criminal history category of VI with the increase of the base offense level to 37, based on his career offender status, substantially overstated and over-represented his criminal history. Also in the alternative, or in addition, Marcos-Quiroga requested that the court consider a deviation from the applicable guideline range pursuant to 18 U.S.C. § 3553(a). The government resisted Marcos-Quiroga's motion on January 9, 2007 (docket no. 34), and filed a Sentencing Memorandum on January 11, 2007 (docket no. 35),

reflecting the government's position that there were no grounds for withdrawal of Marcos-Quiroga's guilty plea and no grounds for the departures or deviations he sought.

By order dated January 16, 2007 (docket no. 36), the undersigned denied Marcos-Quiroga's motion to withdraw his guilty plea on the ground that a misunderstanding or misinformation about the applicable guidelines, even when based on erroneous information from counsel, is not ordinarily grounds for withdrawal of a guilty plea. The court concluded that Marcos-Quiroga had been properly and fully informed by Judge Zoss that a sentence more severe than he expected would not be grounds to withdraw his guilty plea. The court also found that Judge Zoss had fully informed Marcos-Quiroga of the consequences of his guilty plea. For these reasons, the court concluded that Marcos-Quiroga had failed to establish a fair and just reason to withdraw his guilty plea. The court, however, stated that it would wait until the sentencing hearing to take up Marcos-Quiroga's alternative motion for deviation or departure.

Although Marcos-Quiroga's sentencing hearing began on January 19, 2007, it was promptly continued to February 13, 2007, based on counsel's representation that Marcos-Quiroga had asked him to withdraw and that Marcos-Quiroga wished to have new counsel appointed, owing to what Marcos-Quiroga believed was bad advice from his attorney about his potential to be sentenced as a career offender. The court opined that it was inclined to leave current counsel in place, but to appoint new counsel on appeal and for any subsequent 28 U.S.C. § 2255 proceedings, which the defendant indicated might be acceptable. The court also indicated an intent to reconsider its denial of Marcos-Quiroga's motion to withdraw his guilty plea upon a fuller understanding of the circumstances in which Marcos-Quiroga had decided to plead guilty. The court stated that another specific reason for continuing the sentencing was to allow Marcos-Quiroga's counsel to attempt to negotiate a sentence lower than the court would be likely to impose based on the PSIR in

8

an attempt to mitigate the error concerning Marcos-Quiroga's career offender status. The government did not object to the continuance of the sentencing hearing to February 13, 2007.

During the hiatus, on January 24, 2007, Marcos-Quiroga filed a *pro se* motion for new attorney (docket no. 40), which is now before the court, and on February 1, 2007, his counsel filed an Objection To Guideline Finding Of Career Offender (docket no. 42), which is also now before the court. On February 13, 2007, the continuation of Marcos-Quiroga's sentencing hearing began with a conference in chambers and then a brief period on the record during which the court continued the sentencing yet again; granted the government ten days to respond to Marcos-Quiroga's Objection; and explained that, if the court sustained that Objection, the sentencing would continue, but if the court did not sustain that Objection, the court would allow Marcos-Quiroga to withdraw his guilty plea and start anew, in light of counsel's mistake concerning Marcos-Quiroga's career offender status, and would also allow current counsel to withdraw and would appoint new counsel. On February 16, 2007, the government filed a Supplemental Sentencing Memorandum (docket no. 44), stating its response to Marcos-Quiroga's Objection and also reiterating the government's position that there are no grounds for withdrawal of Marcos-Quiroga's guilty plea.

The various motions before the court are now fully submitted.

## II.  LEGAL ANALYSIS

As the court indicated during the February 13, 2007, installment of Marcos-Quiroga's sentencing hearing, reconsideration of Marcos-Quiroga's Motion To Withdraw Guilty Plea is contingent upon the disposition of Marcos-Quiroga's Objection To Guideline Finding Of Career Offender.  Similarly, the disposition of Marcos-Quiroga's Objection

9

will also have an impact on whether or not the court deems it necessary to grant Marcos-Quiroga's *pro se* motion for new counsel. Therefore, the court will consider Marcos-Quiroga's Objection before considering his motion for new counsel or reconsidering his motion to withdraw his guilty plea.

### A. Objection To Career Offender Status

In his February 1, 2007, Objection To Guideline Finding Of Career Offender (docket no. 42), Marcos-Quiroga contends that he should not be exposed to any sentencing enhancements or increase in his criminal history level as a result of his felony conviction of May 17, 2000, for delivery of a controlled substance. The felony conviction in question was identified in both the Indictment and Marcos-Quiroga's plea agreement as "delivery of cocaine, in the Iowa District Court for Cerro Gordo County, on or about June 12, 2000," *see* Indictment; *see also* Plea Hearing, Government's Exhibit 1 (plea agreement), ¶ 21.F., but in the PSIR as involving an arrest on June 5, 1999, and conviction on May 17, 2000. PSIR ¶ 50.3[2]

---

[2]The PSIR identifies this conviction as arising from a controlled drug buy involving the purchase by a confidential informant from Marcos-Quiroga of an eightball (3.54 grams) of methamphetamine. The PSIR explains that Count 1 of the charges against Marcos-Quiroga at that time, a charge of delivery of a controlled substance, was dismissed, but that Marcos-Quiroga was convicted of Count 2, another charge of delivery of a controlled substance, that is, the charge at issue here for statutory enhancement and career offender purposes, and Count 3, a charge of a drug tax stamp violation. The PSIR states that Marcos-Quiroga was sentenced to ten years on this conviction, but that he was paroled on August 23, 2004, and discharged on December 28, 2004. PSIR ¶ 50.

10

### 1.    Arguments of the parties

#### a.    Marcos-Quiroga's argument

In support of his Objection, Marcos-Quiroga argues that the same felony conviction, the 2000 drug conviction, is being used to increase the mandatory minimum and possible maximum sentence for his offense pursuant to 21 U.S.C. §§ 841(b)(1) and 851 and to impose a career offender enhancement pursuant to § 4B1.1 of the United States Sentencing Guidelines.  As a result of such "double counting," he contends that a Sixth Amendment violation has occurred, because he faces an increased sentence based on factors not submitted to or found by a jury.  He contends that the United States Supreme Court's recent decision in *Cunningham v. California*, ___ U.S. ___, 127 S. Ct. 856 (2007), reiterates the sanctity of the Sixth Amendment protections relied on in *Apprendi*, *Booker*, and *Blakely*, and that, although the Supreme Court has exempted prior convictions from jury determination requirements, it has never dealt with a case in which the same conviction was relied on for both a statutory enhancement and a sentencing "aggravator." Indeed, he contends that *Cunningham* stands for the proposition that a fact underlying an enhancement cannot do "double duty": it cannot be used to impose an upper term sentence and an enhanced term.  He reads *Cunningham* to find that California's sentencing scheme protected against such "double counting" and, thus, did not violate the Sixth Amendment. He contends that, pursuant to *Cunningham* and the Supreme Court's other Sixth Amendment decisions, all guideline calculations that may increase his sentence beyond what he agreed and pleaded to should be found by a jury beyond a reasonable doubt and that the same sentence-elevating factor cannot be used in multiple forms to increase his sentence in the absence of such jury determination.  That being so, he contends that only an improper application of sentencing enhancements increases his guideline sentencing range above the ten-year statutory mandatory minimum for his offense.

11

In the alternative, Marcos-Quiroga reiterates arguments first raised in his January 8, 2007, Motion For Deviation Or Departure At Time Of Sentencing, as an alternative to his Motion To Withdraw Plea Of Guilty (docket no. 32). Those arguments are that this court is empowered by 18 U.S.C. § 3553(a) to deviate from the applicable guideline sentence and that the court should do so in Marcos-Quiroga's case to avoid imposing a sentence that would be disparate from the sentence he would otherwise receive for possessing with intent to distribute approximately 12 grams of methamphetamine.

### b. The government's response

In its February 16, 2007, Supplemental Sentencing Memorandum (docket no. 44), filed in response to Marcos-Quiroga's Objection, the government argues that Marcos-Quiroga admitted his prior felony drug conviction in his plea agreement and plea of guilty and that there is no constitutional requirement that a prior conviction be proved to a jury beyond a reasonable doubt. The government also argues that there is no Sixth Amendment violation when a prior felony drug conviction is used both to increase a defendant's statutory maximum sentence and to qualify the defendant as a career offender under the advisory Sentencing Guidelines.

More specifically, the government argues that *Cunningham* is inapplicable here, because it did not involve a sentencing enhancement based on a prior conviction, as in this case, but an enhancement of a sentence based on a judge's finding of aggravating factors, including, principally, the vulnerability of the victim. The government contends that other Supreme Court precedent makes clear that the fact of prior conviction is not a factor that must be proved to a jury beyond a reasonable doubt and that *Cunningham* says nothing to the contrary. The government points out that the statement in *Cunningham* upon which Marcos-Quiroga principally relies refers to the California statutory sentencing scheme, not to any constitutional requirement. Here, the government points out that Marcos-Quiroga

admitted the prior felony drug-trafficking offense during the plea proceedings in this case, and did not object to the fact of his 1997 misdemeanor assault conviction. The government argues that nothing in Sixth Amendment jurisprudence bars using the same felony conviction (in conjunction with another qualifying offense) to increase a defendant's statutory mandatory minimum and maximum sentence and to impose a guidelines enhancement for career offender status.

### 2. Analysis

#### a. Interplay of statutory and guidelines provisions

Because of his prior convictions, Marcos-Quiroga has run afoul of both the enhanced statutory penalty for a drug-trafficking offense after a prior conviction and the enhanced guidelines sentence for a career offender. First, the applicable statute provides that a person who is convicted of distributing 5 grams or more of actual (pure) methamphetamine "after a prior conviction for a felony drug offense has become final . . . shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment." 21 U.S.C. § 841(b)(1)(B). Thus, if Marcos-Quiroga is guilty of the offense charged in this case, Marcos-Quiroga's prior state felony conviction for delivery of cocaine in 2000 (PSIR ¶ 50), if properly proved, indisputably invokes a mandatory minimum sentence of ten years and a statutory maximum of life on the present charge.

Second, the career offender provisions of the Sentencing Guidelines define a "career offender" as follows:

> **(a)** A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the

13

> defendant has at least two prior felony convictions of either a
> crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). The applicable guidelines provision also specifies the offense level for a career offender, if the offense level for a career offender specified in a table, based on the statutory maximum penalty for the current offense, is greater than the offense level otherwise applicable for the current offense under the Sentencing Guidelines. U.S.S.G. § 4B1.1(b). The provision provides, further, that the criminal history category of a defendant who is a career offender "shall be Category VI." U.S.S.G. § 4B1.1(b).

Here, there is no dispute that Marcos-Quiroga was at least eighteen years old at the time he committed the current offense; that the current offense is a felony controlled substance offense; or that his prior state felony drug conviction (PSIR § 50) and his prior state misdemeanor conviction for sexual assault of a minor (PSIR ¶ 39), which constitutes a felony crime of violence under the guidelines, qualify as the necessary prerequisites to his career offender status. *See* U.S.S.G. § 4B1.1(a). Somewhat more specifically, as to the misdemeanor offense, under § 4B1.1, a prior adult federal or state conviction qualifies as a prior felony conviction if the offense is "punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed." U.S.S.G. § 4B1.2, cmt. n. 1 (2002). Pursuant to IOWA CODE § 709.11, any person who commits an assault with intent to commit sexual abuse, but no injury results, is guilty of an aggravated misdemeanor. Pursuant to IOWA CODE § 903.1(2), a person convicted of an aggravated misdemeanor for which no specific penalty is provided faces a maximum penalty of imprisonment not to exceed two years. Thus, this offense qualified as a "felony" under the guidelines. Moreover, the application notes to U.S.S.G. § 4B1.2 expressly state that, for purposes of the career offender guideline, "crime of violence" includes, *inter alia*, aggravated assault

14

and forcible sex offenses. U.S.S.G. § 4B1.2, n.1. Thus, there is no doubt that Marcos-Quiroga's prior conviction for assault with intent to commit sexual abuse, albeit designated a misdemeanor under Iowa law, is a qualifying offense for career offender status under § 4B1.1. There is also no dispute that Marcos-Quiroga's base offense level under § 4B1.1(b) is 37, because the statutory maximum penalty for his current offense is life pursuant to § 841(b)(1)(B); that his Criminal History Category is VI; or that his base offense level, without a career offender enhancement, would only be 28, *see* PSIR ¶ 18, so that the higher career offender base offense level of 37 is controlling. *See* U.S.S.G. § 4B1.1(b) (the base offense level for a career offender is controlling if it is higher than the base offense level for the charged offense).

Under these circumstances, Marcos-Quiroga's prior felony drug conviction is doing "double duty" as the basis for a statutory sentencing enhancement and a guidelines sentencing enhancement. The question is whether such "double duty" is constitutionally permissible.

### b. The alleged Sixth Amendment violation

Marcos-Quiroga contends that it is improper to "double count" his prior felony drug conviction as both a basis for an enhanced statutory penalty pursuant to 21 U.S.C. §§ 841(b)(1)(B) and 851 and as the basis for a career offender guidelines enhancement pursuant to U.S.S.G. § 4B1.1, at least where the prior offense has not been pleaded and proved to a jury beyond a reasonable doubt. Thus, he contends that such "double counting" constitutes a Sixth Amendment violation.

*i.* *Violation of* **Cunningham v. California**. Marcos-Quiroga argues, first, that *Cunningham v. California*, ___ U.S. ___, 127 S. Ct. 856 (2007), bars such "double counting" as a Sixth Amendment violation. The court finds that *Cunningham* neither states nor implies such a bar.

15

Marcos-Quiroga is correct that, in *Cunningham*, Justice Ginsburg, writing for the majority, did observe that, in the case before the Court, "A fact underlying an enhancement cannot do double duty; it cannot be used to impose an upper term sentence and, on top of that, an enhanced term." *Cunningham*, ___ U.S. at ___, 127 S. Ct. at 863. However, she did so *in the context of explaining certain provisions of the California Penal Code*, and specifically cited California Penal Code § 1170(b) in support of the quoted statement. *Id*. That provision of the California Penal Code states, in pertinent part, "The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." CAL. PENAL CODE § 1170(b). There is not the merest hint in the *Cunningham* decision that the Court was considering whether such a provision was constitutional or constitutionally mandated, under the Sixth Amendment or any other provisions, and there is no further discussion of facts impermissibly doing "double duty" anywhere else in that decision. Moreover, Marcos-Quiroga has identified no comparable provision of the *federal* Sentencing Guidelines that prohibits "double duty" of certain facts for purposes of both a statutory enhancement and a guidelines enhancement, and the court has found none. Thus, the statement in *Cunningham* on which Marcos-Quiroga relies is nothing more than an observation by the Supreme Court about a peculiarity of California law and, as such, provides no basis for the relief he requests here.

*ii.* ***Violation of the right to jury determination***. Marcos-Quiroga also argues, more generally, that jury determination of a prior conviction should be required to protect a defendant's Sixth Amendment rights when the prior conviction does "double duty" as the basis for both a statutory sentence enhancement and a guidelines sentence enhancement. He makes this argument even though he admits, as he must, that the Supreme Court has repeatedly exempted prior convictions from the list of facts that may increase a defendant's

maximum sentence that must be pleaded and proved to a jury to protect a defendant's Sixth Amendment rights. Thus, Marcos-Quiroga apparently asserts that "double counting" of a prior conviction presents a special case in which greater Sixth Amendment protection is required. This "special case" argument fares no better than Marcos-Quiroga's argument based on *Cunningham*.

Indeed, in *Cunningham*, the Court reiterated the "bright-line rule" from its *Apprendi* line of cases to be that, "*[e]xcept for a prior conviction,* 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *Cunningham*, ___ U.S. at ___, 127 S. Ct. at 868 (emphasis added) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). The decision in *Cunningham* did not consider whether there were any exceptions to the prior convictions exception. Thus, *Cunningham* clearly does not support the "special case" exception to the exception that Marcos-Quiroga advocates here.

The exception from jury determination for prior convictions is otherwise well-established, and the Supreme Court has never recognized the "double counting" exception to that exception that Marcos-Quiroga advocates. *See Shepard v. United States*, 544 U.S. 13, 24 (2005) (reiterating what it called the "*Apprendi-Jones* rule" without noting exceptions to the prior conviction exception); *United States v. Booker*, 543 U.S. 220, 230 (2005) (same); *Blakely v. Washington*, 542 U.S. 296, 301 (2004) (same); *Apprendi*, 530 U.S. at 490 (same); *Jones v. United States*, 526 U.S. 227, 243 n.6 (1999) (same); *Almendarez-Torres v. United States*, 523 U.S. 224 (1998) (seminal case for the prior conviction exception from the jury determination rule). Indeed, prior convictions do not have to be proved to a jury even when they are the basis for statutory enhancements under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). *See Shepard*, 544 U.S. at 20-26 (the "categorical approach" to determining qualifying convictions under the ACCA

17

applies to pleaded cases as well as jury convictions and such "generic" determinations of the nature of the offense by the court do not offend the *Apprendi-Jones* rule). Thus, no Supreme Court decisions support the exception to the exception that Marcos-Quiroga asserts.

The exception for prior convictions from the jury determination rule, however, has not been without its detractors on the Supreme Court, and it is even possible that a majority of the Court would now favor elimination of that exception. *See Rangel-Reyes v. United States*, ___ U.S. ___, 126 S. Ct. 2873, 2874 (2006) (Thomas, J., dissenting from denial of certiorari) ("[I]t has long been clear that a majority of this Court now rejects that exception.") (citing *Shepard v. United States*, 544 U.S. 13, 27-28 (2005) (Thomas, J., concurring in part and concurring in judgment); *Almendarez-Torres*, 523 U.S. at 248-249 (Scalia, J., joined by Stevens, Souter, and Ginsburg, JJ., dissenting); *Apprendi*, 530 U.S. at 520-521 (Thomas, J., concurring)). The detractors contend that the exception is not based in the Constitution, but only in prior precedent of the Court. *Id.* Even so, the law at present remains that prior convictions do not have to be pleaded and proved to a jury beyond a reasonable doubt, and this court finds that possible "double counting" of the prior conviction does not provide a reasoned basis for imposing the jury determination requirement on a fact that the Court has otherwise specifically excepted from such a requirement.

In this case, however, there is a more fundamental problem with Marcos-Quiroga's suggestion that the rule of jury determination should apply to a prior conviction, at least in circumstances where the prior conviction might be "double counted." That fundamental problem is, as the government points out, that Marcos-Quiroga has admitted the prior felony conviction in his plea agreement. *See* Plea Hearing, Government's Exhibit 1 (plea agreement), ¶ 21.F. Under the general rules in *Apprendi* and its progeny, such an

Case 3:06-cr-03009-MWB   Document 45   Filed 03/23/07   Page 18 of 54

admission eliminates any requirement for jury determination of a fact increasing a defendant's maximum sentencing exposure. *See, e.g., Cunningham*, ___ U.S. at ___, 127 S. Ct. at 860 ("As this Court's decisions instruct, the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury *or admitted by the defendant*.") (emphasis added) (citing *Apprendi*, *Booker*, *Blakely*, and *Ring v. Arizona*, 536 U.S. 584 (2002)). Consequently, Marcos-Quiroga has waived jury determination of his prior convictions and the Sixth Amendment is not offended by imposition of a sentence that is both increased and enhanced on the basis of his prior felony drug conviction.

In light of these precedents and circumstances, whatever constitutional shortcoming there may be in the "double counting" of Marcos-Quiroga's prior felony drug conviction, it is not a Sixth Amendment violation.

### c. Other prohibitions on "double counting"

Although the court cannot find any Sixth Amendment prohibition of the kind that Marcos-Quiroga asserts on "double counting" of a prior conviction for purposes of a statutory sentence enhancement and a guidelines sentence enhancement, the court will also consider briefly whether the "double counting" at issue here is otherwise prohibited. The court finds that it is not.

Just over two decades ago, in *Collins v. Lockhart*, 754 F.2d 258 (8th Cir.), *cert. denied*, 474 U.S. 1013 (1985), the Eighth Circuit Court of Appeals held that it was impermissible under the Eighth and Fourteenth Amendments to "double count" a fact (murder in the course of a robbery) that was an element of an underlying felony (capital felony murder) as an aggravating circumstance (murder committed for pecuniary gain) to be considered in determining whether or not the death penalty should be imposed, because

19

such "double counting" skewed the weighing process in favor of the death penalty. *Collins*, 754 F.2d at 265. Such a holding might seem to suggest that it is, likewise, improper to "double count" as a sentencing enhancement or aggravator the same prior conviction that is an element of the offense of committing a felony drug-trafficking offense after a prior conviction for a felony drug-trafficking offense, within the meaning of 21 U.S.C. §§ 841(a), 841(b)(1)(B) and 851. However, as noted by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), *Collins* was subsequently overruled. *See Williams*, 529 U.S. at 392-93 & n.16 (noting that, in *Lowenfield v. Phelps*, 484 U.S. 231 (1988), the Supreme Court held that an aggravating circumstance may duplicate an element of the capital offense if the class of death-eligible defendants is sufficiently narrowed by the definition of the offense itself, and that the Eighth Circuit Court of Appeals had subsequently decided in *Perry v. Lockhart*, 871 F.2d 1384 (1989), that *Lowenfield* required that court to overrule *Collins*). Similarly, here, the class of defendants eligible for career offender enhancements pursuant to U.S.S.G. § 4B1.1 has already been sufficiently narrowed by the definition of the offense of conviction itself, that is, defendants who commit a drug-trafficking offense after a prior conviction for a drug-trafficking felony, as that offense of conviction is defined by 21 U.S.C. §§ 841(a), 841(b)(1)(B), and 851. Thus, the brief flirtation by the Eighth Circuit Court of Appeals with prohibiting "double counting" of a factor as both a sentencing "aggravator" and an element of a statutory offense does not lead to a prohibition on the "double counting" of prior convictions under both § 4B1.1 and §§ 841(a), 841(b)(1)(B), and 851.

The Eighth Circuit Court of Appeals has not squarely addressed the specific question at issue here—whether using a prior conviction both to enhance a statutory maximum sentence and to impose a career offender guidelines enhancement constitutes impermissible "double counting"—but the Seventh Circuit Court of Appeals has. In

20

*United States v. Moralez*, 964 F.2d 677 (7th Cir.), *cert. denied*, 506 U.S. 903 (1992), the defendant argued that using a prior conviction both to enhance a statutory maximum sentence and again under the Sentencing Guidelines to enhance his offense level and criminal history category pursuant to U.S.S.G. § 4B1.1 amounted to impermissible "double counting." The Seventh Circuit Court of Appeals rejected that argument, because the Sentencing Guidelines do not impose a separate statutory penalty, but merely narrow the sentencing range within the range authorized by the statute itself. *Moralez*, 964 F.2d at 682. In this way, the court concluded, the career offender guideline merely honors the wish of Congress that career offenders be sentenced "at or near the maximum term authorized" by the statute. *Id.* at 683 (quoting 28 U.S.C. § 994(h)). The court noted that other courts had also rejected such a contention. *Id.* at 682 (citing *United States v. Amis*, 926 F.2d 328, 330 (3d Cir. 1991); *United States v. Sanchez-Lopez*, 879 F.2d 541, 558 (9th Cir. 1989)); *see also United States v. LaBonte*, 520 U.S. 751, 762 (1997) (subsequently concluding that the congressional mandate to sentence career offenders "at or near the maximum term authorized" in 28 U.S.C. § 994(h) unambiguously means that the "maximum term authorized" is the term available once all relevant statutory enhancements are taken into account). These decisions strongly suggest that the career offender enhancement does not "double count" a defendant's prior conviction, but imposes a sentence commensurate with the statutory enhancement for the prior conviction standing alone. Thus, these decisions suggest that, contrary to Marcos-Quiroga's general contention, his prior conviction has not been "double counted" as both a statutory sentence enhancement and a guidelines sentence enhancement, but has been used to determine where in the statutory range his guidelines sentence should fall.

21

### 3.    Summary

Marcos-Quiroga has not pointed to any persuasive argument that there is a prohibition on "double counting" a prior conviction for purposes of a statutory maximum penalty pursuant to 21 U.S.C. § 841(a), 841(b)(1)(B), and 851, and for purposes of a § 4B1.1 career offender enhancement under the Sentencing Guidelines, and the court has found none. Therefore, Marcos-Quiroga's Objection To Guideline Finding Of Career Offender (docket no. 42) will be overruled. The court will defer until Marcos-Quiroga's sentencing his alternative argument for a deviation from the applicable guidelines sentence pursuant to 18 U.S.C. § 3553(a).

### B.   Reconsideration Of Motion To Withdraw Guilty Plea

The court advised the parties during the February 13, 2007, installment of Marcos-Quiroga's sentencing hearing that, if the court did not sustain Marcos-Quiroga's Objection To Guideline Finding Of Career Offender, the court would allow Marcos-Quiroga to withdraw his guilty plea and start anew, in light of counsel's mistake concerning Marcos-Quiroga's career offender status. The prerequisite to reconsideration of Marcos-Quiroga's motion to withdraw his guilty plea has now come to pass. The government, however, has resisted allowing Marcos-Quiroga to withdraw his guilty plea, even if the court overrules his Objection. Therefore, the court must give due consideration to whether or not Marcos-Quiroga should be allowed to withdraw his guilty plea under the circumstances now presented, starting with the arguments of the parties.

### 1.    Arguments of the parties

In his original motion to withdraw his guilty plea, Marcos-Quiroga argued that he was induced to plead guilty by specific representations of his counsel that he was not a career offender as the result of his 2000 felony drug-trafficking conviction and his 1997

22

misdemeanor assault conviction. Marcos-Quiroga contends that he was specifically told by his counsel that he was facing only the mandatory minimum sentence of ten years. The government, however, contends that the court should not now reconsider its denial of Marcos-Quiroga's motion to withdraw his guilty plea, despite overruling his objection to the recommendation that he be sentenced as a career offender, because no one could predict what sentence Marcos-Quiroga would receive. The government also points out that the court went to great lengths during Marcos-Quiroga's plea colloquy to ensure that he understood that no one could make him a promise about what sentence would be imposed. To allow Marcos-Quiroga to withdraw his guilty plea now, the government contends, would render the plea colloquy a pointless exercise, and neither the government nor the court should be bound by erroneous advice a defendant received from his or her attorney, where the government and the court were not parties to those discussions. The government contends that authorities already cited by the court recognize that erroneous or inaccurate information by an attorney to a client regarding a possible sentence under the guidelines is neither grounds to withdraw a guilty plea nor grounds for post-conviction relief pursuant to 28 U.S.C. § 2255.

### 2. Applicable law

#### a. Authority to reconsider

The court has no doubt that it has the inherent authority to reconsider, in its discretion and even *sua sponte*, its ruling on Marcos-Quiroga's motion to withdraw his guilty plea where the interest of justice would be served, even though no rule or statute expressly permits such reconsideration. *See, e.g., United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982) ("[W]hether the case *sub judice* be civil or criminal[,] so long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so.") (internal

23

quotation marks omitted), *cert. denied*, 460 U.S. 1070 (1983); *accord United States v. Aguirre*, 214 F.3d 1122, 1124 (9th Cir. 2000) ("[D]istrict courts generally have 'inherent authority' to decide motions for reconsideration and rehearing of orders in criminal proceedings," but 18 U.S.C. § 3582 expressly limits the court's authority to reconsider sentencing decisions), *cert. denied*, 531 U.S. 970 (2000); *United States v. Barragan-Mendoza*, 174 F.3d 1024, 1028 (9th Cir. 1999) ("We agree that generally district courts do have 'inherent authority' to decide motions for reconsideration or rehearing of orders in criminal proceedings, even when there is no statute authorizing such motions."); *United States v. Breit*, 754 F.2d 526, 530 (4th Cir. 1985) ("The general rule at common law in both civil and criminal cases was that a court could modify, vacate, or set aside orders previously entered by that court through mistake or inadvertence provided, however, such reconsideration occurred in the term of court during which the orders were made. A more recent interpretation of this general common-law rule in the criminal context provides that despite the nonexistence of a specific rule in the Federal Rules of Criminal Procedure, a district court has the inherent power, and thus jurisdiction, to reconsider interlocutory orders prior to entry of judgment on such orders.") (citations omitted). Therefore, the court turns to reconsideration of the pertinent grounds for withdrawal of a guilty plea.

### b.    *Grounds to withdraw a guilty plea*

Rule 11(d) provides, in pertinent part, that "[a] defendant may withdraw a plea of guilty  . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(b)(2)(B).  "While this standard is liberal, the defendant has no automatic right to withdraw a plea."  *United States v. Ramirez-Hernandez*, 449 F.3d 824, 826 (8th Cir. 2006); *United States v. Smith*, 422 F.3d 715, 723 (8th Cir. 2005) (the "fair and just" standard "does not create an automatic right to withdraw a plea").  This is so, because "[a]

24

guilty plea is a solemn act not to be set aside lightly." *United States v. Embrey*, 250 F.3d 1181, 1183 (8th Cir. 2001); *accord Smith*, 422 F.3d at 723 ("The defendant bears the burden of proving why one of the recognized justifications should permit a withdrawal of what he had solemnly made under oath."). Even where a defendant establishes a fair and just reason to withdraw his guilty plea, before granting the motion, the court must also consider "'whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion,'" but the court need not consider these additional factors if it sees no "fair and just reason" to withdraw the plea. *Ramirez-Hernandez*, 449 F.3d at 826 (quoting *United States v. Nichols*, 986 F.2d 1199, 1201 (8th Cir. 1993)); *accord United States v. Davis*, 452 F.3d 991, 993-94 (8th Cir. 2006).

Marcos-Quiroga contends that he should be allowed to withdraw his guilty plea because his counsel provided ineffective assistance when counsel incorrectly advised him that he would not be subject to the career offender provisions of the Sentencing Guidelines. To establish ineffective assistance of counsel, a defendant must show that (1) "counsel's representation fell below an objective standard of reasonableness"; and (2) that such failure prejudiced him in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88 & 694 (1984). The Supreme Court held in *Hill v. Lockhart*, 474 U.S. 52 (1985), that "the two part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel," and that "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58-59. Thus, ineffective assistance of counsel may present fair and just reasons to withdraw a guilty plea.

25

### 3. Analysis

Whether or not Marcos-Quiroga should be allowed to withdraw his guilty plea based on his counsel's incorrect advice concerning his career offender status may ultimately turn on the standards for an ineffective-assistance claim set forth in *Strickland* and *Hill*. The court finds, however, that it must first address "ripeness" and "timeliness" questions concerning such a claim in light of Eighth Circuit precedent.

### a. Ripeness of Marcos-Quiroga's ineffective-assistance claim

Although ineffective assistance of counsel may constitute a ground to withdraw a defendant's guilty plea, *Hill*, 474 U.S. at 58-59, such claims are "usually best litigated in collateral proceedings" when the record can be more fully developed. *Ramirez-Hernandez*, 449 F.3d at 826-27 (declining to consider on direct appeal the defendant's contention that he should have been allowed to withdraw his guilty plea owing to ineffective assistance of counsel); *see also Davis*, 452 F.3d at 994 (finding the record "not developed at all," so that the court deferred to § 2255 proceedings consideration of whether ineffective assistance of counsel justified withdrawal of a guilty plea); *United States v. Mugan*, 441 F.3d 622, 631 (8th Cir. 2006) (where no factual record had been developed to support a defendant's contention of ineffective assistance of counsel as a fair and just reason to withdraw his guilty plea, such a claim was "best reviewed in collateral proceedings"). On the other hand, an ineffective-assistance claim will be considered on direct appeal, and presumably, could be considered by the district court on a motion to withdraw a guilty plea, "where the record has been fully developed, where not to act would amount to a plain miscarriage of justice, or where counsel's error is readily apparent." *Id.* at 827 (citing *United States v. Cook*, 356 F.3d 913, 919-20 (8th Cir. 2004), and opining that "[a] properly developed record for purposes of determining a claim of ineffective assistance of counsel [as grounds to withdraw a guilty plea] would include

26

cross-examination by [the defendant] of his counsel on the question of what advice counsel gave him"); *see also Cook*, 356 F.3d at 919-20 (adding to the list of circumstances in which it is proper to consider an ineffective-assistance claim without waiting for collateral review those situations in which counsel's performance was "obviously deficient").

The court finds that this is not a case in which Marcos-Quiroga's ineffective-assistance claim must wait for collateral proceedings pursuant to § 2255, although that may be the procedural footing in which such claims are "usually best litigated." *See Ramirez-Hernandez*, 449 F.3d at 826-27). Here, the pertinent record is fully developed. *Compare Davis*, 452 F.3d at 994 (the record was "not developed at all," so that later consideration of the claim pursuant to a § 2255 motion was appropriate); *Mugan*, 441 F.3d at 631 (where no factual record had been developed to support the claim, the claim was "best reviewed in collateral proceedings"), *with Ramirez-Hernandez*, 449 F.3d at 827 (recognizing, at least in theory, that an ineffective-assistance claim would be ripe for consideration on direct appeal "where the record has been fully developed"); *Cook*, 356 F.3d at 919-20 (same). As this court found above, the record clearly demonstrates that Marcos-Quiroga's counsel specifically represented to him prior to his guilty plea and preparation of the PSIR that he would *not* qualify as a career offender based on his 1997 misdemeanor assault conviction and his 2000 felony drug conviction and that his sentencing range in this case would be no greater than the mandatory minimum sentence of ten years; that the government's initial determination of the sentencing parameters and its submissions to the probation office agreed with Marcos-Quiroga's counsel's assessment; that Marcos-Quiroga's decision to plead guilty to the offense charged in this case was based upon his counsel's assurance that he was not a career offender; and that, but for his counsel's advice, Marcos-Quiroga would not have pleaded guilty to the offense charged in this case. Neither the circumstances nor the nature of the advice Marcos-Quiroga received from his

27

counsel, nor the course he would have taken had he received different advice is in question. Where counsel has "fallen on his sword" as completely as counsel did in this case, nothing would be gained by delaying resolution of the defendant's ineffective-assistance claim to allow further development of the record or cross-examination by Marcos-Quiroga of his counsel on the question of what advice counsel gave him. *See Ramirez-Hernandez*, 449 F.3d at 827 (opining that "[a] properly developed record for purposes of determining a claim of ineffective assistance of counsel [as grounds to withdraw a guilty plea] would include cross-examination by [the defendant] of his counsel on the question of what advice counsel gave him").

Furthermore, counsel's error in this case is readily apparent, and indeed, counsel has readily admitted to it: Counsel incorrectly advised Marcos-Quiroga that he would not be found to be a career offender based on counsel's incorrect determination that the 1997 assault conviction would not "count" towards career offender status. Moreover, as explained more fully below, counsel's error constituted clearly deficient performance, because the career offender guidelines were clearly applicable in light of Marcos-Quiroga's prior convictions. The clarity of counsel's error is another reason to consider Marcos-Quiroga's ineffective-assistance claim now, on reconsideration of his motion to withdraw his guilty plea, rather than to defer that question to later § 2255 proceedings. *See Ramirez-Hernandez*, 449 F.3d at 827 (recognizing circumstances in which counsel's error is "readily apparent" as warranting immediate consideration of an ineffective assistance claim); *Cook*, 356 F.3d at 919-20 (prompt review is appropriate where counsel's error is "readily apparent" and counsel's performance was "obviously deficient").

Finally, a § 2255 motion asserting the same ineffective-assistance claim is all but inevitable, if no relief is afforded to Marcos-Quiroga at this time. The court deems it a waste of resources and a miscarriage of justice to delay for consideration on a § 2255

28

motion, which cannot add to the pertinent record, a question on which the court would undoubtedly grant relief in such subsequent proceedings, applying essentially the same standards applicable here and now. *Id.* (the court may properly consider an ineffective-assistance claim, instead of deferring it to collateral proceedings pursuant to § 2255, *inter alia*, "where not to act would amount to a plain miscarriage of justice").

Therefore, the court finds that Marcos-Quiroga's motion to withdraw his guilty plea is "ripe" for reconsideration now, so the court will not delay such reconsideration until § 2255 proceedings.

### b. Timeliness of Marcos-Quiroga's claim

Strangely enough, having just concluded that Marcos-Quiroga's claim is "ripe," the court must also consider whether Marcos-Quiroga's ineffective assistance claim is "timely," in light of precedent from the Eighth Circuit Court of Appeals. In *United States v. Payton*, 260 F.3d 898 (8th Cir. 2001), the Eighth Circuit Court of Appeals held that a claim of ineffective assistance of counsel was untimely where it was first raised in a motion to withdraw a guilty plea, apparently reasoning that such a claim was contrary to the defendant's averments, at the time of his guilty plea, that he was satisfied with counsel's performance and his failure to assert any dissatisfaction with counsel's performance before entering his guilty plea, which the district court had found to be knowing and voluntary. *Payton*, 260 F.3d at 900. This holding, however, was in the context, first, of the court's finding not credible counsel's declaration that he had advised the defendant to plead guilty believing that the defendant could supply prosecutors with enough information about an alleged conspirator to earn a U.S.S.G. § 5K1.1 motion, which the defendant did not get and claimed was grounds to withdraw his guilty plea. *Id.* This holding was also reached in the context of a further finding that the defendant's plea colloquy demonstrated that he had entered his guilty plea knowingly admitting to conspiring to distribute cocaine base,

Case 3:06-cr-03009-MWB   Document 45   Filed 03/23/07   Page 29 of 54

knowing the sentencing significance of pleading guilty to a cocaine base offense, and understanding that there were no guarantees that he would earn a § 5K1.1 downward departure. *Id.*

A rule that a defendant cannot assert ineffective assistance as a ground to withdraw a guilty plea unless he has indicated dissatisfaction with his counsel prior to the guilty plea is unrealistic at best, where there are myriad circumstances in which the ineffectiveness of counsel may not become apparent until *after* the defendant has pleaded guilty. It is simply asking too much of criminal defendants, who generally have little understanding of the federal judicial system, even if they have considerable experience with it, to recognize before they plead guilty that their counsel has failed to represent them competently. It is equally unrealistic to impose a rule that a defendant *must* express dissatisfaction with counsel's performance before pleading guilty in order to preserve a claim of ineffective assistance of counsel as a ground to withdraw a guilty plea, because such a rule simply invites defense counsel to advise defendants to express such dissatisfaction as a matter of course, even where the defendants actually have no present reasons or information upon which to base any expressions of dissatisfaction, in order to preserve their clients' right to withdraw a guilty plea based on ineffective assistance of counsel.

Leaving aside the unrealistic nature of such a "pre-plea dissatisfaction" rule, however, it is clear that the circumstances here are distinguishable from those in *Payton*. First, Marcos-Quiroga did not discover that he had been incorrectly advised that he could not be found to be a career offender until after he had pleaded guilty, and prior to his guilty plea, even the government's conduct suggested that his counsel was correct. Thus, he could not possibly have expressed dissatisfaction with counsel's performance sooner than he did, because it was not until after his guilty plea that the PSIR first informed him

that counsel was (or might be) wrong. *Compare Payton*, 260 F.3d at 899 (the defendant alleged that counsel had been ineffective in advising him to plead guilty to a cocaine base offense, even though he had previously claimed that he only distributed "twist," a substance not containing cocaine, and in advising him that he could supply enough information for a "substantial assistance" reduction, so that at least one of counsel's alleged errors was apparent before the guilty plea). Second, unlike the situation in *Payton*, counsel's admission of precisely what advice he gave Marcos-Quiroga—including his admission that such advice was clearly erroneous and that Marcos-Quiroga's guilty plea was based predominantly, if not solely, on that bad advice and the related assurance that he would not face a sentence longer than the ten-year mandatory minimum—is entirely credible. *Compare id.* at 900 (the court did not find credible counsel's declaration that he had advised the defendant to plead guilty to a cocaine base offense, ignoring the defendant's prior claim that he only distributed a substance that did not contain cocaine, and that he had erroneously advised the defendant that he could supply prosecutors with enough information about an alleged conspirator to earn a U.S.S.G. § 5K1.1 motion). Finally, nothing in Marcos-Quiroga's plea colloquy demonstrates that he had entered his guilty plea knowing that such a plea might result in sentencing under the career offender provision, even if he understood that there were no guarantees about the length of his sentence. *Compare id.* (the defendant pleaded guilty knowing the sentencing significance of pleading guilty to a cocaine base offense, and understanding that there were no guarantees that he would earn a § 5K1.1 downward departure). Thus, Marcos-Quiroga's original motion to withdraw his guilty plea based on ineffective assistance of counsel was timely.

Case 3:06-cr-03009-MWB   Document 45   Filed 03/23/07   Page 31 of 54

### c.    Marcos-Quiroga's entitlement to relief

Preliminary concerns about "ripeness" and "timeliness" resolved, the court turns to the merits of Marcos-Quiroga's ineffective-assistance claim.  Again, if Marcos-Quiroga can show that his counsel was ineffective in advising him that he could not be sentenced as a career offender, then he may be able to establish "fair and just reason" to withdraw his guilty plea.  *Hill*, 474 U.S. at 58-59 (ineffective assistance of counsel may be a ground to withdraw a guilty plea).  To show ineffective assistance of counsel, Marcos-Quiroga must establish both that counsel's performance was deficient and that it prejudiced him.  *Strickland*, 466 U.S. at 687-88 & 694.   The court will consider the prongs of the *Strickland* analysis in turn.

### i.    *Deficient performance*.

In *Thomas v. United States*, 27 F.3d 321 (8th Cir. 1994), the Eighth Circuit Court of Appeals considered a defendant's claim in § 2255 proceedings that he should have been allowed to withdraw his guilty plea based on counsel's failure to advise him that he could be sentenced as a career offender, which could carry a more severe sentence.  *Thomas*, 27 F.3d at 325.  Thus, *Thomas* is on point here.  However, the court rejected the defendant's ineffective-assistance claim in *Thomas*, so that, for Marcos-Quiroga to prevail, *Thomas* must be distinguishable.

In *Thomas*, the court found that the defendant could not satisfy the "deficient performance" requirement of the *Strickland* test for ineffective assistance of counsel, as follows:

> 1.    At the time of the plea hearing, it was impossible to know, or even predict, whether Thomas would be sentenced as a career offender.  As the district court pointed out at that hearing, and as Thomas stated he understood, the court would be unable "to determine the guidelines sentence" for him "until after the presentence report had been completed."  Thomas further stated that he had no complaint "about the job

32

of lawyering" his counsel had done, that he was "satisfied with the advice and services and representation" his lawyer had given him, and that if he were "dissatisfied or disgruntled or disappointed with the eventual disposition [of his] case," his lawyer "will not be the one to blame for that."

When the presentence report recommended that Thomas receive an enhanced sentence as a career offender, Thomas challenged that recommendation on various grounds. He did not, however, seek to withdraw his guilty plea and stand trial because his lawyer's failure to tell him he might be so sentenced constituted ineffective assistance of counsel. Indeed, at the beginning of the sentencing hearing, Thomas stated, "Yes, I have", in reply to the clerk's question whether he had been "satisfied with the representation of counsel in this matter?" If his lawyer's failure to advise him of the possibility that he might be treated as a career offender constituted ineffective assistance of counsel, one would have expected Thomas to have raised the issue at that time.

As the district court stated in denying Thomas' § 2255 motion, Thomas' "right to be apprised of the court's sentencing options is no greater than the provisions of Fed. R. Crim. P. 11(c)(1) [now 11(b)(1)], which requires only that the court inform the defendant of the applicable mandatory minimum and maximum sentences." Our ruling in the prior appeal that the "District Court is not required to inform the defendant of the applicable guideline range" included the possibility of an enhanced sentence as a career offender. In these circumstances, the failure of Thomas' lawyer to inform him of that possibility did not establish that his lawyer's "representation fell below an objective standard of reasonableness[.]" *Baxter v. United States,* 966 F.2d 387, 389 (8th Cir. 1992). *Cf. Barker v. United States,* 7 F.3d 629, 633 (7th Cir. 1993), *cert. denied,* 510 U.S. 1099, 114 S. Ct. 939, 127 L. Ed. 2d 229 (1994) ("misinformation from a defendant's attorney, such as an incorrect estimate of the offense severity rating, standing alone, does not constitute ineffective assistance of counsel"); *United States v. Arvanitis,* 902 F.2d 489, 494

33

(7th Cir. 1990) ("attorney's incorrect estimate of the applicable offense severity rating" under Parole Commission Guidelines not ineffective assistance of counsel); *United States v. Sweeney,* 878 F.2d 68, 69-70 (2d Cir. 1989) (lawyer's "erroneous estimate" of Guideline Sentencing range not ineffective assistance of counsel.)[.]

*Thomas*, 27 F.3d at 325-26.

The court finds that the circumstances presented here are distinguishable from those in *Thomas* and that a different conclusion is required. Contrary to the circumstances in *Thomas*, it was entirely possible to know or at least predict whether Marcos-Quiroga would be sentenced as a career offender. *Compare id.* at 325. Both Marcos-Quiroga and his counsel were aware of his prior felony drug conviction and his prior misdemeanor conviction for assault with intent to commit sexual abuse prior to his guilty plea. As explained above, on page 14, there should have been no doubt at the time that Marcos-Quiroga pleaded guilty to the offense charged here, from the applicable guidelines definition of "felony conviction" and Iowa statutes defining Marcos-Quiroga's misdemeanor offense that Marcos-Quiroga had, and that he and his counsel knew that he had, two prior convictions that would qualify him for career offender status. Thus, counsel certainly could have predicted with a fair degree of certainty that Marcos-Quiroga *would* be sentenced as a career offender, even if Marcos-Quiroga understood that the court would be unable to determine his precise guidelines sentence until after the PSIR was completed. *Cf. id.* at 325-26 (relying on the defendant's understanding that the court would not be able to determine the guidelines sentence until after the PSIR was completed to find no deficient performance of counsel).

Also, for the reasons stated above in reference to the court's "timeliness" determination, a rule that a defendant cannot assert deficient performance of counsel based

34

on improper advice leading to a guilty plea if the defendant did not express dissatisfaction with counsel's conduct at the plea hearing is unrealistic, where the deficiency simply may not be apparent until after the plea. *Contra Thomas*, 27 F.3d at 326 (finding no deficient performance where the defendant did not complain about his counsel's performance at the plea hearing); *also contra Payton*, 260 F.3d at 900 (finding an ineffective-assistance claim based on failure to provide appropriate advice about pleading guilty untimely because the defendant did not complain about counsel's performance at the plea hearing). More to the point, unlike the defendant in *Thomas*, Marcos-Quiroga did immediately seek to withdraw his guilty plea and did assert a desire to stand trial as soon as he learned from the PSIR that the probation office recommended that he be sentenced as a career offender on the basis of the offenses that his counsel had told him would not qualify him for career offender status. *Compare Thomas*, 27 F.3d at 326 (finding that the defendant's failure to seek to withdraw his guilty plea before his sentencing because of his lawyer's failure to tell him he might be sentenced as a career offender and his statement at the sentencing hearing that he was satisfied with his lawyer's performance demonstrated that there was no deficient performance of counsel). Thus, *Thomas* does not dictate the result here.

The court in *Thomas* also held that the defendant was not entitled to be apprised of his possible sentence beyond notice of the applicable mandatory minimum and maximum sentences, as required by Rule 11(c)(1), now Rule 11(b)(1), of the Federal Rules of Criminal Procedure,[3] so that counsel's failure to inform him of the possibility of an

---

[3]Rule 11 was "reorganized" in 2002 and, as part of that "reorganization," "amended Rule 11(b)(1) requires the court to apprise the defendant of his or her rights before accepting a plea of guilty or nolo contendere," including amending the advice the defendant was entitled to receive concerning the possible sentence to be imposed for the offense. FED. R. CRIM. P. 11, Advisory Committee Notes, 2002 Amendments; *and*

(continued...)

enhanced sentence under the Sentencing Guidelines did not fall below an objective standard of reasonableness. *Id*. With all due respect to the Eighth Circuit Court of Appeals, this holding appears to this court, at best, to confuse the "deficient performance" and "prejudice" prongs of the *Strickland* analysis, and at worst, to invite uninformed guilty pleas. Furthermore, it appears to confuse a defendant's right to effective assistance *of counsel* under the Sixth Amendment with a defendant's due process and Rule 11 right to be informed *by the court* of the maximum sentence and any mandatory minimum sentence that he might face.

More specifically, at best, the holding in *Thomas* means that incompetent advice from counsel is not "deficient" or "unprofessional" is some third party remedies the deficiency, which plainly confuses the issues of whether counsel's conduct actually fell below a professional standard and whether the defendant was harmed or "prejudiced" by counsel's conduct. The decision in *Strickland*, however, treats these inquiries as separate prongs of the analysis of ineffective-assistance claims. *Strickland*, 466 U.S. at 687-88 & 694 (the two prongs of analysis for an ineffective-assistance claim are deficient performance and prejudice to the defendant).

At worst, such a holding encourages uninformed pleas, because criminal history is the single most important factor in sentencing, after offense conduct. Inviting counsel to make no exploration of a defendant's criminal history and no attempt to provide an accurate and informed assessment of a defendant's sentencing exposure, if the court has informed a defendant of the mandatory minimum and maximum sentence he or she faces, does nothing to provide a defendant with a realistic understanding of the relative risks of

---

[3](...continued)
*compare* FED. R. CRIM. P. 11(c)(1) (1999 Amendments).

36

pleading guilty or going to trial, which may render a guilty plea neither knowing nor voluntary. *See Parke v. Raley*, 506 U.S. 20, 28-29 (1992) (holding that "a guilty plea must be both knowing and voluntary" to be constitutionally valid, which means that it must be "a voluntary and intelligent choice among the alternative courses of action open to the defendant"); *but see United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005) (recognizing that a guilty plea may be involuntary where the defendant's counsel materially misrepresents the consequences of a guilty plea, but nevertheless finding that advice to a defendant that his criminal history would not be used against him, when he was later sentenced as a career offender, did not warrant withdrawal of the guilty plea, because he was not prejudiced in light of the terms of his plea agreement and the court's Rule 11 disclosures), *cert. denied*, ___ U.S. ___, 126 S. Ct. 2318 (2006). Because of the importance of criminal history on a potential sentence to the determination and evaluation of a defendant's alternative courses of action, either pleading guilty or going to trial, counsel must be encouraged to undertake, not discouraged from undertaking, a careful evaluation of a defendant's criminal history to ensure the voluntariness of a defendant's guilty plea.[4]

---

[4]The court is aware that, because of the low hourly rate under the CJA, court-appointed counsel may feel some pressure to cut corners on determination of criminal history, because it appears to be relatively straight forward. The court also recognizes that counsel does not have the same resources immediately available to either the court (through the probation office) or the United States Attorney's Office to obtain and assess accurate criminal histories, that defendants' reports of their own criminal histories are notoriously inaccurate, and that whether an offense is classified under state law as a misdemeanor or felony is not the end of the inquiry, as U.S.S.G. § 4B1.2 clearly states. Thus, because of the importance of the assessment of criminal history to a defendant's sentencing exposure—and the occasionally dire consequences of a mistake in such an assessment, as this case demonstrates—counsel should not be discouraged from making

(continued...)

Case 3:06-cr-03009-MWB   Document 45   Filed 03/23/07   Page 37 of 54

Nor is it appropriate to excuse defense counsel's failure to provide adequate advice concerning the potential effect of a defendant's criminal history on the ground that *the court* is required by Rule 11(b)(1) to inform the defendant of "any maximum possible penalty, including imprisonment, fine, and term of supervised release" and "any mandatory minimum penalty." FED. R. CRIM. P. 11(b)(1)(H) & (I); *see Thomas*, 27 F.3d at 326 (reasoning that counsel's performance was not deficient, even though counsel had failed to advise the defendant of his potential to be sentenced as a career offender, because the defendant's right to be apprised of the sentencing options was no greater than the requirements of Rule 11(c)(1), now Rule 11(b)(1), that the court inform the defendant of the applicable mandatory minimum and maximum sentences).  Whether or not *the court* has satisfied a defendant's due process and Rule 11(b)(1) rights seems to this court to be entirely irrelevant to whether or not *counsel* has satisfied the defendant's Sixth Amendment right to adequate representation.  If counsel's obligation to inform a defendant of his or her potential sentence extends no further than the court's obligation to provide the same advice, then counsel is unnecessary.  Thus, the Sixth Amendment must envision that counsel will play some role that the court will not, and the measure of the adequacy of counsel's performance is the Sixth Amendment right to effective counsel—which, as formulated in *Strickland*, requires that counsel's representation must not fall "below an

---

[4](...continued)

reasonable efforts to determine and to assess criminal history, and the courts must not only impose a professional duty to do so, but must be willing to compensate counsel adequately for time spent making an adequate exploration of a defendant's criminal history to arrive at an informed assessment of the impact of that criminal history upon a defendant's likely sentence.  Otherwise, it is difficult to imagine how a defendant can make "a voluntary and intelligent choice among the alternative courses of action open to the defendant," either pleading guilty or going to trial.  *Parke*, 506 U.S. at 28-29.

38

objective standard of reasonableness," *Strickland*, 466 U.S. at 688—not due process or Rule 11(b)(1). *Cf. United States v. Day*, 969 F.2d 39, 43 & n.4 (3d Cir. 1992) (holding that counsel performed deficiently when he failed to advise the defendant of his sentencing exposure, but noting that the duty thereby imposed upon defense counsel should not be construed to impose a duty on the district courts beyond the requirements of then Rule 11(c)(1)). The court will return to the question of the proper showing of "prejudice" in a case like this, below.

Moreover, there is a split in the circuits concerning whether and when incorrect advice about a defendant's career offender status, or comparable error in determining sentencing exposure, falls below an objective standard of reasonableness. *Compare United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999) (an attorney's "mere inaccurate prediction of a sentence" does not demonstrate the deficient performance component of an ineffective-assistance claim); *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993) ("A miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel."), *cert. denied*, 510 U.S. 1184 (1994); *with Bethel v. United States*, 458 F.3d 711, 717-18 (7th Cir. 2006) (observing that "a reasonably competent lawyer will attempt to learn all of the relevant facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis to the client before allowing the client to plead guilty," but holding that the record was insufficient to determine whether counsel had met these requirements); *United States v. Gaviria*, 116 F.3d 1498, 1512 (D.C. Cir. 1997) (a defendant satisfied the "deficient performance" prong of *Strickland*, where counsel's representation that the defendant *would be* sentenced as a career offender following a plea and that his guideline range would be 360 months to life was plainly incorrect, because the court had decided a year and a half earlier that a defendant convicted of conspiracy could

39

not be sentenced as a career offender, and the defendant's counsel should have been aware of that decision and its implications for his client); *Day*, 969 F.3d at 43 (defendant's counsel was ineffective under *Strickland* where he failed to advise him that he might be classified as a career offender and subject to enhanced penalties under the Sentencing Guidelines, because "familiarity with the structure and basic content of the Guidelines (including the definition and implications of career offender status) has become a necessity for counsel who seek to give effective representation").[5] For the reasons stated above, this court finds that the better reasoned—and more realistic—side of this split is the one recognizing that "a reasonably competent lawyer will attempt to learn all of the relevant facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis to the client before allowing the client to plead guilty" and "a gross mischaracterization of the sentencing consequences of a plea may strongly indicate deficient performance, [although] it is not proof of deficiency." *Bethel*, 458 F.3d at 717; *accord Day*, 969 F.3d at 43 ("[F]amiliarity with the structure and basic content of the

---

[5]Other courts have assumed, without deciding, that counsel performed deficiently by failing to advise a defendant that he could be subject to a career offender enhancement, but have ultimately rejected ineffective-assistance claims on failure of the defendant to prove prejudice. *See Bethel*, 458 F.3d at 717-18 (the court was unable to determine on the record presented whether counsel's performance was deficient, which included analysis of whether counsel acted "in good faith," in his failure to advise the defendant that he could be sentenced as a career offender, but assuming that counsel's performance was deficient, the defendant had failed to prove prejudice); *Silva*, 430 F.3d at 1099-1100 (also assuming that counsel had been ineffective in failing to advise a defendant of his career offender exposure, but holding that the defendant was not prejudiced in light of disclosure of his potential sentence and the effect of his criminal history in his plea agreement and Rule 11 disclosure by the court); *Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000) (assuming, for the sake of argument and without other analysis, that counsel was ineffective in failing to advise the defendant of his career offender exposure, but holding that the defendant could not prove prejudice), *cert. denied*, 531 U.S. 829 (2000).

40

Guidelines (including the definition and implications of career offender status) has become a necessity for counsel who seek to give effective representation.").

This court finds, further, that these requirements of objectively reasonable professional conduct were not met here, where counsel admits that he failed to evaluate properly Marcos-Quiroga's career offender potential and improperly advised him that he could not be sentenced as a career offender without evaluating the effect of Marcos-Quiroga's 1997 misdemeanor conviction for assault with intent to commit sexual abuse, in addition to the 2000 felony drug conviction, where the effect of that prior assault conviction was clear cut. *See Gavira*, 116 F.3d at 1512 ("Gaviria satisfies *Strickland's* first prong. His counsel's representation that Gaviria *would be* sentenced as a career offender following a plea and that his Guideline range would be from 360 months to life was plainly incorrect. Because we issued *[United States v.] Price* [, 990 F.2d 1367 (D.C. Cir. 1993),] a year and a half prior to the November 1994 status conference, Gaviria's counsel should have been aware of the decision and its implications for his client.") (emphasis added); *Day*, 969 F.3d at 43 (although the court could not "state precisely what standard defense counsel must meet when advising their clients about the desirability of a plea bargain and, concomitantly, about sentence exposure," the minimum duty was "familiarity with the structure and basic content of the Guidelines (including the definition and implications of career offender status)," and counsel failed to meet that standard); *and compare Bethel*, 458 F.3d at 717-18 (the record was insufficient to determine, for example, whether counsel's failure to recognize that a prior conviction would qualify the defendant for career offender status was based on "a subtle misinterpretation of [the defendant's] state court criminal record, which itself appears somewhat muddled"); *United States v. Colon-Torres*, 382 F.3d 76, 85-88 (1st Cir. 2004) (there were sufficient indicia of ineffective assistance to warrant an evidentiary hearing, *inter alia*, on a defendant's

41

assertion that counsel failed to advise him of his potential career offender status, where it was undisputed that counsel did not independently investigate the defendant's criminal history before recommending that he enter into a plea agreement). Thus, Marcos-Quiroga has satisfied the first prong of the *Strickland* analysis of his ineffective-assistance claim based on bad advice from counsel concerning his potential to be sentenced as a career offender.

   *ii.*   ***Prejudice***.  Because the court finds that Marcos-Quiroga has satisfied the "deficient performance" prong of his ineffective-assistance claim, the court turns to whether or not he can satisfy the "prejudice" prong. *See Strickland*, 466 U.S. at 687-88 & 694 (ineffective-assistance claims require proof of both "deficient performance" and "prejudice"). In support of his original motion to withdraw his guilty plea, Marcos-Quiroga expressly contended that his decision to plead guilty was based on his counsel's assurance that he was not a career offender as the result of his 2000 felony drug conviction and 1997 misdemeanor assault conviction. In its Supplemental Trial Memorandum, however, the government contends that Marcos-Quiroga was properly advised by the court of his potential maximum and mandatory minimum sentences and that a finding that Marcos-Quiroga was nevertheless prejudiced by his counsel's error would render pointless the court's plea colloquy with criminal defendants.

   In the order in which this court originally denied Marcos-Quiroga's motion to withdraw his guilty plea, this court cited copious authority holding that *counsel's* failure to advise a defendant correctly about his sentencing exposure did not present fair and just reason to allow the defendant to withdraw his guilty plea, *i.e.*, that such conduct of counsel did not result in the necessary "prejudice" to the defendant, where the defendant was adequately advised *by the court* of the mandatory minimum and potential maximum sentence to which the defendant could be subject. *See* Order of January 16, 2007 (docket

42

no. 36) at 3-4 (citing *Ramirez-Hernandez* 449 F.3d at 826; *United States v. Granados*, 168 F.3d 343, 345 (8th Cir. 1999); *United States v. D'Angelo*, 172 F.3d 1046, 1047 (8th Cir. 1999); *United States v. Bond*, 135 F.3d 1247, 1248 (8th Cir. 1998); *United States v. Burney*, 75 F.3d 442, 444 (8th Cir. 1996); *United States v. Mahler*, 984 F.2d 899, 902 (8th Cir. 1993); *United States v. Ludwig*, 972 F.2d 948, 950-51 (8th Cir. 1992)). Upon reconsideration, however, the court finds that the authorities on which the court relied do not apply the proper standard for determining whether ineffective assistance of counsel consisting of improper advice about a defendant's potential sentence has "prejudiced" the defendant sufficiently to warrant allowing the defendant to withdraw a guilty plea.

According to the Supreme Court in *Hill v. Lockhart*, 474 U.S. 52 (1985), to make the necessary showing of "prejudice" to support withdrawal of a guilty plea based on ineffective assistance of counsel, a defendant must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Thus, under the *Hill* standard, the question is *not* whether *the court* has precluded any potential prejudice to the defendant by providing adequate disclosure of the defendant's potential sentence, but whether *counsel's* error affected the defendant's decision to plead guilty or go to trial. Unlike the lower court decisions upon which this court relied in its original denial of Marcos-Quiroga's motion to withdraw his guilty plea, the *Hill* standard distinguishes between protection (or violation) of a defendant's due process and Rule 11 rights *by the court* and protection (or violation) of a defendant's Sixth Amendment right to counsel *by counsel*.

This court has found only two decisions of the Eighth Circuit Court of Appeals that at least arguably apply the *Hill* standard to claims of ineffective assistance like Marcos-Quiroga's. The court finds that both decisions are distinguishable.

43

First, in *Thomas v. United States*, 27 F.3d 321 (8th Cir. 1994), which was discussed above in reference to the "deficient performance" prong of the analysis, the court found that the defendant could not establish the "prejudice" prong of his § 2255 ineffective-assistance claim that he should have been allowed to withdraw his guilty plea, because his lawyer did not advise him that he could be sentenced as a career offender. The court reasoned as follows:

> 2. Thomas also has not shown that his attorney's failure to inform him that he could be given an enhanced sentence as a career offender prejudiced him in that "there is a reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S. Ct. at 2068.
>
> Although Thomas stated in his § 2255 motion (which his attorney signed) that he "had no idea when he pled guilty that he could be convicted as a 'career offender,'" he did not state that had he been aware of that possibility he would have pleaded not guilty and stood trial. Moreover, there is no reason to believe that, if he had pleaded not guilty and gone to trial, he would not have been convicted and would not have been sentenced as a career offender. Indeed, since the district court's sentence of 262 months imprisonment on Count 6 was at the bottom of the Guideline range of 262-327 months, Thomas might have received a greater sentence had he gone to trial than he received on his guilty plea.

*Thomas*, 27 F.3d at 326.

Although the court in *Thomas* cited only *Strickland*, the court did consider whether the defendant had shown that, but for counsel's alleged error, he would have pleaded not guilty and stood trial, which is essentially the *Hill* standard for determining "prejudice" where a defendant asserts that counsel's bad advice concerning the defendant's potential sentence led the defendant to plead guilty. *See Hill*, 474 U.S. at 59 (to prove "prejudice"

44

in such circumstances, the defendant must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial"). Specifically, the Eighth Circuit Court of Appeals found that the defendant had not made such a showing in *Thomas*, because he had never stated that, had he been aware of the possibility that he would be sentenced as a career offender, he would not have pleaded guilty and would have stood trial. *Thomas*, 27 F.3d at 326. Here, however, Marcos-Quiroga has asserted, and the court has specifically found, that but for counsel's assurances that Marcos-Quiroga would not be sentenced as a career offender, he would not have pleaded guilty. Thus, Marcos-Quiroga's case is distinguishable from *Thomas* under the *Hill* standard, because unlike the defendant in *Thomas*, Marcos-Quiroga has shown "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *See Hill*, 474 U.S. at 59 (stating this standard for "prejudice" on a claim that ineffective assistance of counsel is a ground to withdraw a guilty plea).

The court in *Thomas* also considered whether or not the defendant would have received a greater sentence by pleading guilty or going to trial as part of its "prejudice" analysis. *See Thomas*, 27 F.3d at 326. While such a consideration is not expressly identified in *Hill*, if a defendant would likely face a lesser sentence by pleading guilty than going to trial, that fact might cast doubt on the defendant's contention that he would not have pleaded guilty but for counsel's bad advice. Such a consideration may also properly fall within the general formulation of "prejudice" in *Strickland* in terms of whether "there is a reasonable probability that, but for counsel's [alleged] unprofessional errors, *the result of the proceeding* would have been different." *Strickland,* 466 U.S. at 694 (emphasis added). Nevertheless, one thing that is disturbing about considering the defendant's potential sentence, based on a plea or a conviction at trial, is that it presumes that the

defendant will ultimately be convicted. Moreover, the right that is or should be at issue in the "prejudice" analysis is the defendant's right to make "a voluntary and intelligent choice among the alternative courses of action open to the defendant," either pleading guilty or going to trial, *see Parke*, 506 U.S. at 28-29, and the "prejudice" analysis should, therefore, focus on whether the defendant's right to make such an "intelligent choice" has been "prejudiced" by counsel's "deficient performance." An analysis that simply looks at whether the end result might have been different—*i.e.*, whether the defendant might have fared better under one course or the other—overlooks the defendant's right to choose and also overlooks the effect of counsel's deficient performance on that right to choose. Even so, assuming that the consideration of the defendant's likely sentence pursuant to a plea or a guilty verdict is relevant to the "prejudice" analysis, Marcos-Quiroga's case is still distinguishable from the defendant's case in *Thomas*, because Marcos-Quiroga has not yet been sentenced, so there is no basis to compare where he has actually been sentenced with either his potential guidelines sentencing range or his potential sentence if convicted at trial. *Compare Thomas*, 27 F.3d at 326 (there was no reason to believe that, if the defendant had pleaded not guilty and gone to trial, he would not have been convicted and would not have been sentenced as a career offender, and because the district court had sentenced the defendant at the bottom of his guideline range, he might have received a greater sentence had he gone to trial than he received on his guilty plea).

Similarly, in *United States v. Gomez*, 326 F.3d 971 (8th Cir. 2003), the Eighth Circuit Court of Appeals rejected a defendant's contention that he was entitled to withdraw his guilty plea on the ground that counsel did not correctly advise him regarding the career offender provisions of the Sentencing Guidelines. *Gomez*, 326 F.3d at 974. In that case, the court found that, although counsel did not advise the defendant regarding the career offender guidelines, counsel did advise the defendant that he would likely be placed in

46

criminal history category V or VI. *Id.* Thus, the court suggested that counsel's conduct had not actually been "deficient," because the defendant had been advised of his likely criminal history category, even if he had not been expressly told that the career offender provision would place him in that category. Moreover, turning to "prejudice," the court in *Gomez* found that the defendant's assertion that advice regarding the career offender issue would have affected his decision to plead guilty was not credible, where defense counsel testified, instead, that the expectation of a downward departure motion from the government was the principal reason that she urged the defendant to plead guilty, and the court found that such a downward departure, if granted, would have substantially reduced the defendant's guidelines sentence, whether or not he was sentenced as a career offender. *Id.* at 975. The court also found that the inference that the career offender issue did not significantly affect the defendant's decision to plead guilty in that case was confirmed by the fact that the defendant did not make a timely presentence motion to withdraw his plea on that ground when he first learned from the presentence report that he would likely be sentenced as a career offender. *Id.* Again, the circumstances in Marcos-Quiroga's case are entirely distinguishable. Marcos-Quiroga was *not* told that his criminal history category would be category VI or that he could be sentenced as a career offender and was, instead, expressly told that he would not be sentenced as a career offender, so that, unlike the defendant in *Gomez*, Marcos-Quiroga has shown "deficient performance" of counsel. More importantly, for purposes of "prejudice," unlike the situation in *Gomez*, the court finds entirely credible Marcos-Quiroga's assertion that, but for counsel's bad advice, he would not have pleaded guilty. Finally, unlike the defendant in *Gomez*, Marcos-Quiroga did promptly move to withdraw his guilty plea when he learned that, contrary to counsel's assertions, the PSIR recommended that he be sentenced as a career offender, so that there

Case 3:06-cr-03009-MWB   Document 45   Filed 03/23/07   Page 47 of 54

is a clear inference that the career offender issue did significantly affect Marcos-Quiroga's decision to plead guilty.

In short, Marcos-Quiroga was "prejudiced" under the *Hill* standard, because Marcos-Quiroga has "show[n] that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Thus, Marcos-Quiroga has established both the "deficient performance" and "prejudice" prongs of his claim of ineffective assistance of counsel based on bad advice about his career offender status, as the two-prong analysis is formulated in *Strickland* and *Hill*.

*iii.* ***Other pertinent considerations***. Although the court has determined that Marcos-Quiroga's counsel was ineffective in giving bad advice about Marcos-Quiroga's potential to be sentenced as a career offender, and that such ineffective assistance may constitute a fair and just reason to withdraw his guilty plea, *see Hill*, 474 U.S. at 58-59, that is not the end of the inquiry concerning whether or not Marcos-Quiroga should be allowed to withdraw his guilty plea. Rather, as explained above, even where a defendant establishes a fair and just reason to withdraw his guilty plea, before granting the motion, the court must also consider "'whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion.'" *Ramirez-Hernandez*, 449 F.3d at 826 (quoting *Nichols*, 986 F.2d at 1201).

Here, Marcos-Quiroga has not made any professions of innocence of the charge, but that circumstance standing alone is not dispositive of whether or not he should be allowed to withdraw his guilty plea. *See id.* (identifying whether or not the defendant has asserted his innocence as one of the further considerations to decide whether a defendant should be allowed to withdraw a guilty plea after showing a fair and just reason to do so).

48

Rather, of greater significance here, in the court's view, is the short time between Marcos-Quiroga's guilty plea and his motion to withdraw it. *See id.* (identifying time between the guilty plea and the motion as another factor). Marcos-Quiroga moved to withdraw his guilty plea as soon as the PSIR demonstrated that his counsel was quite wrong about whether or not he could be sentenced as a career offender. Thus, the matter was brought to the court's and the government's attention at the point where it was least inconvenient to remedy the problem and the record was still freshest. Finally, the court can find no real prejudice that will be imposed on the government if Marcos-Quiroga is allowed to withdraw his guilty plea. *See id.* (third consideration). The government should not have much greater difficulty remarshalling its evidence and witnesses to take this matter to trial now than it would have had when trial was originally scheduled—and certainly will have less difficulty doing so now than if the court were to wait until § 2255 proceedings to grant Marcos-Quiroga relief—and the court cannot consider the burden of putting the government to its proof to obtain a conviction to be "prejudice."

Thus, the court finds that no other considerations warrant denial of relief on Marcos-Quiroga's motion to withdraw his guilty plea.

### 4. *Summary*

Upon reconsideration of Marcos-Quiroga's motion to withdraw his guilty plea, the court finds that counsel's performance was "deficient," where counsel admits that he failed to evaluate properly Marcos-Quiroga's career offender potential and improperly advised him that he could not be sentenced as a career offender, where counsel did not evaluate the effect of Marcos-Quiroga's 1997 misdemeanor conviction for assault with intent to commit sexual abuse, in addition to his 2000 felony drug conviction, and where the effect of that misdemeanor conviction as a qualifying prior conviction for purposes of career offender status was clear cut. The court also finds that Marcos-Quiroga was "prejudiced" by

49

counsel's unprofessional conduct where, but for counsel's assurances that Marcos-Quiroga would not be sentenced as a career offender, he would not have pleaded guilty. Thus, the ineffective assistance of Marcos-Quiroga's counsel constitutes fair and just reason to allow Marcos-Quiroga to withdraw his guilty plea. Finally, the court finds no other pertinent considerations undermine the court's determination that Marcos-Quiroga has shown fair and just reason to withdraw his guilty plea, based on bad advice from counsel concerning his potential to be sentenced as a career offender. Upon reconsideration, Marcos-Quiroga's January 8, 2007, Motion To Withdraw Plea Of Guilty [And] Alternative Motion For Deviation Or Departure At Time Of Sentencing (docket no. 32) will be granted to the extent that Marcos-Quiroga will be allowed to withdraw his guilty plea entered on October 25, 2006, and start anew.

## C. The Defendant's Motion For New Counsel

On January 24, 2007, Marcos-Quiroga filed a *pro se* motion for new attorney (docket no. 40), which is also now before the court. The court deems it appropriate to consider that motion now in light of the court's determination, above, that current counsel was ineffective in providing Marcos-Quiroga with bad advice concerning his career offender status.

A court's decision to grant or deny a request for new counsel is reviewed for abuse of discretion. *See United States v. Boone*, 437 F.3d 829, 839 (8th Cir. 2006). As the Eighth Circuit Court of Appeals has explained,

> In order for such a request to be successful, the defendant must show justifiable dissatisfaction with his current representation. [*United States v. Barrow*, 287 F.3d 733, 737 (8th Cir. 2002).] Justifiable dissatisfaction can arise from irreconcilable conflict, a complete breakdown in communication, or any other factor

50

interfering significantly with an attorney's ability to provide zealous representation, but it is not established merely by a defendant's frustration with counsel's performance or disagreement with his tactical decisions. *Id.* at 738.

*Boone*, 437 F.3d at 839. The court may also consider whether the defendant has demonstrated that he was prejudiced by any decision of his counsel. *Id.* Finally, the court should balance the defendant's right to counsel of his choice against the public's interest in prompt and efficient administration of justice, keeping in mind that counsel must have a thorough knowledge of the record to represent a defendant well. *Id.* (citing *United States v. Swinney*, 970 F.2d 494, 499 (8th Cir. 1992)).

In this case, the court concludes that all of the pertinent considerations weigh in favor of allowing Marcos-Quiroga's current counsel to withdraw and appointing new counsel. This is not a case in which Marcos-Quiroga is merely unhappy with present counsel, *see id.* (the defendant's mere unhappiness with present counsel is not enough), but one in which the court has found that counsel was ineffective in erroneously advising Marcos-Quiroga that he could not be sentenced as a career offender. Such circumstances reasonably call into question whether Marcos-Quiroga and his counsel are in irreconcilable conflict and whether his current counsel will be able to provide zealous representation. *See id.* Moreover, these circumstances show that Marcos-Quiroga has actually been prejudiced by advice of his current counsel. *Id.*[6] Finally, although present counsel is

---

[6]Nothing in the court's ruling that current counsel was ineffective in this case or the removal of current counsel in this case should suggest that counsel is anything but a diligent, zealous, and talented criminal defense attorney. Indeed, in the court's reckoning, he is one of the most able attorneys on this district's CJA panel, consistently producing excellent or even extraordinary results because of his wellspring of skill, unsurpassed effort, and imagination. *See, e.g., United States v. Barnett*, 426 F. Supp. 2d 898 (N.D.

(continued...)

thoroughly familiar with the record, the court does not believe that this case is so complicated that appointing new counsel and allowing new counsel sufficient time to prepare for trial or to advise Marcos-Quiroga to make a better informed guilty plea will so impinge upon the public's interest in prompt and efficient administration of justice as to outweigh Marcos-Quiroga's right to counsel of his choice. *Id.*

Therefore, the court deems it appropriate to allow current counsel to withdraw and to grant Marcos-Quiroga's motion for new counsel. The court will also grant Marcos-Quiroga's new counsel reasonable time between the date of this order and a rescheduled trial date to allow new counsel to become familiar with the case and to consult with Marcos-Quiroga concerning Marcos-Quiroga's options of pleading guilty or going to trial and to attempt to negotiate a plea agreement with the government.

## III. CONCLUSION

The court concludes that there is no impermissible "double counting" of Marcos-Quiroga's prior felony drug conviction in this case, in light of *Cunningham v. California*, ___ U.S. ___, 127 S. Ct. 856 (2007), other decisions in the Supreme Court's Sixth Amendment jurisprudence, or otherwise, where that prior conviction is being used both to enhance a statutory penalty under 21 U.S.C. §§ 841(b)(1)(B) and 851 and to enhance

---

[6](…continued)
Iowa 2006) (counsel, who was not appointed until remand for resentencing, successfully argued that the defendant should be allowed to withdraw his guilty plea to a charge of using or carrying a firearm during and in relation to a crime of violence, because that count did not charge an offense, and thus, did not invoke the court's jurisdiction, in that two other counts, predicate offenses to the first count, were not "crimes of violence," producing one of the most extraordinary results in a criminal case that this court has encountered in thirteen years on the district court bench).

Case 3:06-cr-03009-MWB    Document 45    Filed 03/23/07    Page 52 of 54

a guidelines sentence for a career offender under U.S.S.G. § 4B1.1. On the other hand, the court finds that Marcos-Quiroga was rendered ineffective assistance of counsel when he pleaded guilty to a drug-trafficking offense only after his attorney assured him that he did not qualify as a career offender under the guidelines, counsel's advice was clearly wrong, and clearly prejudiced Marcos-Quiroga, because but for that bad advice, Marcos-Quiroga would not have pleaded guilty. That ineffective assistance of counsel, and other pertinent considerations, weigh in favor of allowing Marcos-Quiroga to withdraw his guilty plea and also convince the court to allow present counsel to withdraw and to appoint new counsel.

THEREFORE,

1.      Marcos-Quiroga's February 1, 2007, Objection To Guideline Finding Of Career Offender (docket no. 42) is **denied**.

2.      Upon reconsideration, Marcos-Quiroga's January 8, 2007, Motion To Withdraw Plea Of Guilty [And] Alternative Motion For Deviation Or Departure At Time Of Sentencing (docket no. 32) is **granted** to the extent that Marcos-Quiroga **shall be allowed to withdraw his guilty plea** entered on October 25, 2006.

3.      Marcos-Quiroga's January 24, 2007, *pro se* motion for new attorney (docket no. 40) is **granted**. Current counsel shall be permitted to withdraw, and the Clerk of Court shall appoint new counsel to represent Marcos-Quiroga in further proceedings in this matter.

4.      This matter shall be rescheduled for trial by separate order. The rescheduled trial date shall be such that new counsel will have a reasonable time to become familiar with the case and to consult with Marcos-Quiroga concerning Marcos-Quiroga's options

53

of pleading guilty or going to trial and to attempt to negotiate a plea agreement with the government.

**IT IS SO ORDERED.**

**DATED** this 23rd day of March, 2007.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

54