# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

FRANCISCO MARCOS-QUIROGA,

Defendant.

No. CR 06-3009-MWB

MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANT'S MOTION IN LIMINE

_____

## TABLE OF CONTENTS

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    A. *Admissibility Of Prior Convictions* . . . . . . . . . . . . . . . . . . . . . . . 3
        *1. The challenged evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        *2. The misdemeanor convictions* . . . . . . . . . . . . . . . . . . . . . . 4
        *3. The drug convictions in dispute* . . . . . . . . . . . . . . . . . . . 5
    B. *Chain Of Custody* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        *1. The challenged evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        *2. Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . . . . 9
        *3. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    C. *The Plea Agreement* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        *1. The challenged evidence* . . . . . . . . . . . . . . . . . . . . . . . . . 12
        *2. Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . . . 13
        *3. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# I. INTRODUCTION

In an Indictment (docket no. 2) handed down March 22, 2006, defendant Francisco Marcos-Quiroga was charged with possessing, with intent to distribute, 5 grams or more of actual (pure) methamphetamine within 1,000 feet of a playground after having previously been convicted of a felony drug-trafficking offense. Eventually, Marcos-Quiroga agreed to plead guilty pursuant to a "non-cooperation" plea agreement in which he stipulated that he had knowingly possessed the methamphetamine, intending to distribute some or all of it to another person. He also stipulated that he had previously been convicted of a felony drug offense, specifically, delivery of cocaine, in the Iowa District Court for Cerro Gordo County, on or about June 12, 2000. In addition to the prior drug-trafficking conviction, Marcos-Quiroga and his counsel were aware prior to his guilty plea that Marcos-Quiroga had also been convicted in 1997 of a state misdemeanor offense for assault with intent to commit sexual abuse against a fourteen-year-old girl. Marcos-Quiroga entered his guilty plea on October 25, 2006.

By order (docket no. 45) dated March 23, 2007, the court granted Marcos-Quiroga's January 8, 2007, Motion To Withdraw Plea Of Guilty [And] Alternative Motion For Deviation Or Departure At Time Of Sentencing (docket no. 32) to the extent that Marcos-Quiroga was allowed to withdraw his guilty plea entered on October 25, 2006, on the ground that he was rendered ineffective assistance of counsel when he pleaded guilty to a drug-trafficking offense only after his attorney assured him that he did not qualify as a career offender under the guidelines. The court found that counsel's advice was clearly wrong, in light of his prior convictions for delivery of cocaine and sexual abuse, and that the bad advice clearly prejudiced Marcos-Quiroga, because but for that bad advice,

2

Marcos-Quiroga would not have pleaded guilty. The court also granted Marcos-Quiroga's January 24, 2007, *pro se* motion for new attorney (docket no. 40). *See United States v. Marcos-Quiroga*, 478 F. Supp. 2d 1114 (N.D. Iowa 2007).

This matter was rescheduled for trial on May 7, 2007, with Marcos-Quiroga represented by new counsel. The trial was subsequently continued to the current date of July 16, 2007.

On May 29, 2007, Marcos-Quiroga filed the Motion In Limine (docket no. 51) currently before the court. In his motion, Marcos-Quiroga seeks to exclude evidence of numerous prior convictions, any and all physical drug evidence with an incomplete chain of custody, and his plea agreement entered into before the court allowed him to withdraw his guilty plea. On June 11, 2007, the government filed its Resistance To Defendant's Motion In Limine (docket no. 63) asserting its intent to offer only some of the challenged evidence.

The defendant's Motion In Limine is now fully submitted.

## II. LEGAL ANALYSIS

### A. Admissibility Of Prior Convictions

#### 1. The challenged evidence

Marcos-Quiroga seeks to exclude evidence of the following twenty-two prior convictions: (1) a 2000 conviction for Delivery of Cocaine and a Tax Stamp Violation in Cerro Gordo County, Iowa; (2) a 1998 conviction for Possession of Methamphetamine (serious misdemeanor) in Cerro Gordo County, Iowa; (3) a 1987 conviction for False Imprisonment in Lamb County, Texas; (4) a 1989 conviction for Battery in Frederick City, Texas; (5) a 1990 conviction for Disorderly Conduct in Monona County, Iowa; (6) a 1991 conviction for Possession of Paraphernalia in Fort Pierce, Florida; (7) a 1995 conviction

3

for Public Intoxication and Disorderly Conduct in Hardin County, Iowa; (8) a 1995 conviction for Operating While Intoxicated and Assault in Hardin County, Iowa; (9) a 1995 conviction for Trespassing and Harassment—3rd Degree in Hardin County, Iowa; (10) a 1995 conviction for Public Intoxication in Hardin County, Iowa; (11) a 1995 conviction for Public Intoxication in Franklin County, Iowa; (12) a 1996 conviction for Operating While Intoxicated – 2nd Offense in Hardin County, Iowa; (13) a 1997 conviction for Assault with Intent to Commit Sexual Abuse in Franklin County, Iowa; (14) a 1996 conviction for Operating Without a License in Cerro Gordo County, Iowa; (15) a 1997 conviction for Driving While License Barred in Hardin County, Iowa; (16) a 1997 conviction for Assault in Hardin County, Iowa; (17) a November 6, 1997, conviction for Driving While License Barred in Cerro Gordo County, Iowa; (18) a November 22, 1997, conviction for Driving While License Barred in Cerro Gordo County, Iowa; (19) a 1998 conviction for Theft—5th Degree in Cerro Gordo County, Iowa; (20) a 1999 conviction for Consumption/Public Intoxication in Cerro Gordo County, Iowa; (21) a 1999 conviction for Disorderly Conduct in Cerro Gordo County, Iowa; and (22) a 1999 conviction for Domestic Assault in Cerro Gordo County, Iowa. The government represents that it does not intend to offer evidence of any of the convictions except the 2000 felony conviction for Delivery of Cocaine, (1) above, and the 1998 serious misdemeanor conviction for Possession of Methamphetamine, (2) above.

## 2. *The misdemeanor convictions*

With the exception of the two prior drug convictions on which there is a fighting issue, the court agrees with the parties that Marcos-Quiroga's numerous arrests and convictions on various charges, even a 1991 conviction for possession of paraphernalia, should be excluded. Those prior convictions are either irrelevant to proof of the charges in this case, and thus should be excluded pursuant to Rule 402 of the Federal Rules of

Case 3:06-cr-03009-MWB   Document 65   Filed 06/12/07   Page 4 of 21

Evidence, or have such scant relevance that their probative value is substantially outweighed by the danger of unfair prejudice, and thus should be excluded pursuant to Rule 403. The prejudice in question is that jurors might simply convict this defendant of charged offenses, because he is a "bad actor." Similarly, the court finds that such evidence of prior convictions has scant value for any permissible purpose for admitting "bad acts" evidence under Rule 404(b), where, with the exceptions addressed separately below, none of these prior arrests or convictions involved the controlled substance at issue here, actual (pure) methamphetamine. Similarly, none of the prior convictions appears likely to qualify for use as impeachment evidence under Rules 608 or 609, even if this defendant testifies.

Therefore, the court will exclude evidence of prior convictions (3) through (22) above.

### 3. *The drug convictions in dispute*

The court turns its focus to the admissibility of the prior convictions on which the government has stated an intention to offer evidence, identified as (1) and (2) above. Marcos-Quiroga argues that these two prior drug convictions are not sufficiently similar to the charged offense and are sufficiently remote in time that they should be excluded. He also contends that these two convictions pose a risk of distracting the jury from its central task, which is determining whether Marcos-Quiroga was unlawfully possessing with intent to distribute actual (pure) methamphetamine within 1,000 feet of a playground. Even if otherwise admissible, he contends that these prior convictions should be excluded on the ground that their limited probative value is outweighed by the risk of undue prejudice. He contends that this is particularly true, where the evidence that the government can offer concerning the present charge is based on assumptions, not evidence that he actually possessed any controlled substances.

5

The government, on the other hand, argues that these two drug convictions are admissible pursuant to Rule 404(b) of the Federal Rules of Evidence to show Marcos-Quiroga's knowledge, intent, motive, and absence of mistake in committing the charged offense. The government asserts that it will prove these prior convictions with certified copies of the convictions, so that they will be supported by substantial evidence. The government argues that the convictions are sufficiently similar in kind and close in time to the charged conduct, because the standard is reasonableness, not absolute number of years, and convictions substantially older have been deemed admissible. The government also argues that the probative value of these prior convictions outweighs any potential for prejudice, because one of the convictions involved the same type of drug, methamphetamine, charged here, and both involved conduct similar to the conduct charged here. The government also argues that there is nothing inherently inflammatory about the nature of either prior conviction that would bias or confuse the jury.

Rule 404(b) of the Federal Rules of Evidence prohibits admission of prior convictions and "bad acts" simply to show a propensity to commit a charged offense, but does permit such evidence to be admitted for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." FED. R. EVID. 404(b). The Eighth Circuit Court of Appeals has explained the scope of admissibility of evidence pursuant to Rule 404(b), as follows:

> While we have interpreted Rule 404(b) to be a rule of inclusion, *see United States v. Sykes*, 977 F.2d 1242, 1246 (8th Cir. 1992), this interpretation does not give the government the unhindered ability to introduce evidence of prior crimes. Instead, the evidence of prior crimes must be 1) relevant to a material issue; 2) similar in kind and not overly remote in time to the charged crime; 3) supported by sufficient evidence; and 4) such that its potential prejudice

6

> does not substantially outweigh its probative value. *See United States v. Williams*, 308 F.3d 833, 837 (8th Cir. 2002).

*United States v. Crenshaw*, 359 F.3d 977, 998 (8th Cir. 2004); *accord United States v. Lakoskey*, 462 F.3d 965, 979-80 (8th Cir. 2006) (reiterating that Rule 404(b) is a rule of inclusion and that evidence is admissible under Rule 404(b) if it satisfies the same four-factor test), *cert. denied*, ___ U.S. ___, 127 S. Ct. 1388 (2007). Thus, the Eighth Circuit Court of Appeals will reverse admission of purported Rule 404(b) evidence "'only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts.'" *United States v. Marquez*, 462 F.3d 826, 830 (8th Cir. 2006) (quoting *United States v. Thomas,* 398 F.3d 1058, 1062 (8th Cir. 2005), with internal quotations omitted).

As to the first factor in the test for admissibility of such evidence, relevance to a material issue, *see Lakoskey*, 462 F.3d at 979-80; *Crenshaw*, 359 F.3d at 998, the Eighth Circuit Court of Appeals has "frequently upheld the admission of prior drug convictions to show knowledge and intent when the defendant denied the charged drug offense." *Marquez*, 462 F.3d at 830. Thus, defendant Marcos-Quiroga's prior convictions for possession of methamphetamine and delivery of cocaine are relevant. As to the second factor, the prior conviction for possession of methamphetamine involved a similar controlled substance to the one that Marcos-Quiroga is currently charged with possessing with intent to distribute, so that it is "similar in kind" to the charged offense here, and occurred within the last nine years, so that it is not so remote in time from the charged offense as to warrant exclusion. *Lakoskey*, 462 F.3d at 979-80 (second factor); *Crenshaw*, 359 F.3d at 998 (same). Although the prior conviction for delivery of cocaine involved a different controlled substance from the one at issue here, it involved similar conduct (distribution versus possession with intent to distribute), so that it is also similar in kind,

7

and also occurred within the last seven years, so that it is not excessively remote. *Id.* As to the third factor, the government asserts that it will offer to prove these prior convictions using only the certified copies of the convictions, which the court finds would be sufficient evidence to support use of the prior conviction. *Id.* (third factor); *Crenshaw*, 359 F.3d at 998 (same); *see also United States v. Ruiz-Estrada*, 312 F.3d 398, 403-04 (8th Cir. 2002) (the government offered sufficient reliable evidence of a prior conviction in the form of a certified copy of the criminal complaint and a warrant of commitment).

Finally, as to the fourth factor, the balance of probative value and prejudice, *Lakoskey*, 462 F.3d at 979-80 (fourth factor); *Crenshaw*, 359 F.3d at 998 (same); *see also Clark v. Martinez*, 295 F.3d 809, 814 (8th Cir. 2002) (Rule 403 applies to evidence otherwise admissible pursuant to Rule 404(b)); *United States v. Mound*, 149 F.3d 799, 801-02 (8th Cir. 1998) (same), *cert. denied*, 525 U.S. 1089 (1999), the court finds that there is no substantial potential for unfair prejudice in this case as to the evidence of the two prior drug convictions in dispute. Moreover, any potential for prejudice of such evidence will be mitigated by the limited evidence that the government intends to introduce to prove the prior convictions, consisting only of the certified copies of the convictions. *Cf. United States v. Headbird*, 461 F.3d 1074, 1078 (8th Cir. 2006) (a defendant is not unduly prejudiced where the evidence of prior convictions consists of "little beyond the fact and nature" of the prior offenses). Any potential for prejudice will also be mitigated by a limiting instruction reminding the jurors that they may consider this evidence only for a purpose permissible under Rule 404(b), not to decide whether defendant Marcos-Quiroga is guilty of a charged offense. *See United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006) ("[A] limiting instruction [concerning proper use of evidence of a prior conviction] diminishes the danger of unfair prejudice arising from the admission of the evidence."); *United States v. Spears*, 469 F.3d 1166, 1170 (8th Cir. 2006) (also finding a limiting

8

instruction adequate to guard against potential prejudice), *petition for cert. filed* (March 2, 2007) (No. 06-9864); *Marquez*, 462 F.3d at 830 (there was no abuse of discretion in admitting evidence of prior drug convictions where the district court gave such a limiting instruction); *and compare Crenshaw*, 359 F.3d at 1001-02 (the government's actual use of the evidence of a prior conviction did not demonstrate that the evidence was used to prove intent and the court's instruction failed to mention intent as a basis for considering the evidence).

Therefore, evidence of defendant Marcos-Quiroga's prior convictions for possession of methamphetamine and distribution of cocaine, identified in (1) and (2), above, will be admissible at trial, and the portion of defendant Marcos-Quiroga's Motion In Limine seeking to exclude that evidence will be denied.

### B.   Chain Of Custody

#### 1.      The challenged evidence

Next, Marcos-Quiroga seeks to exclude all physical drug evidence in which the chain of custody has been disturbed.  Marcos-Quiroga's counsel asserts that, based on research and interactions with members of the Mason City, Iowa, police department, there is reason to believe that the chain of custody of the physical evidence in this case, since 2005, has been disturbed.

#### 2.      Arguments of the parties

Marcos-Quiroga argues that his research and interactions suggest that the chain of custody of physical evidence may have been disturbed in a manner that would call into question the authenticity of such evidence.  He requests a pretrial evidentiary hearing on that issue to determine, prior to calling a jury, whether or not the government can meet the standard for admissibility of evidence with a doubtful chain of custody set forth in *United*

9

*States v. Chapman*, 345 F.3d 630 (8th Cir. 2003). He contends that, upon an evidentiary hearing, the presumption of the integrity of the evidence can be overcome, leaving the government without any physical evidence in this case.

The government asserts that the defendant has articulated no basis whatsoever for his bald assertion that there are chain of custody problems with any physical evidence in this case. In the absence of any showing whatsoever of tampering or other basis to question the chain of custody, the government asserts that a pretrial ruling barring admission of physical evidence, or even an evidentiary hearing on the issue, is unwarranted.

### 3. Analysis

In *United States v. Chapman*, 345 F.3d 630 (8th Cir. 2003), the Eighth Circuit Court of Appeals explained the standards for admission or exclusion of physical evidence, as follows:

> "A district court may admit physical evidence if the court believes a reasonable probability exists that the evidence has not been changed or altered. In making this determination, absent a showing of bad faith, ill will, or proof of tampering, the court operates under a presumption of integrity for the physical evidence." *United States v. Cannon,* 88 F.3d 1495, 1503 (8th Cir. 1996) (citation omitted).

*Chapman*, 345 F.3d at 637; *see also United States v. Lothridge*, 332 F.3d 502, 504 (8th Cir. 2003) ("We have noted that in order for evidence to be admissible, a chain of custody must exist that shows a reasonable probability that the evidence has not been changed or altered," also citing *Cannon*, 88 F.3d at 1503). In fact, the Eighth Circuit Court of Appeals has observed that the presumption of integrity of physical evidence is such that "any defect in the chain of custody goes more to its weight than its admissibility." *United States v. Briley*, 319 F.3d 360, 363 (8th Cir. 2003).

10

The court in *Chapman* found that the defendant had "fail[ed] to indicate how [the physical evidence in question] ha[d] been changed in any important respect and offer[ed] nothing specific to rebut the presumption of integrity." *Id.* This was so, the court concluded, even though "there were clearly other steps in the chain as the evidence moved from Colorado to Minnesota and from its discovery to court," but based on the testimony about the handling of the evidence, the court found no plain error in the district court's admission of the evidence. *Chapman*, 345 F.3d at 637. Similarly, in *Lothridge*, the court found that sufficient chain of custody existed to permit admission of physical evidence, crack cocaine, where the government adequately accounted for differences in weight of the drugs on three different weighings, the defendant never denied that the substance that he possessed was crack cocaine or that the crack cocaine offered into evidence was the same as the crack cocaine seized, and the potentially differing weights were not such that they could affect the defendant's sentence. *Lothbridge*, 332 F.3d at 504.

The court presided over the recent trial in *United States v. Lee*, No. CR 07-3004-MWB (N.D. Iowa), cited by Marcos-Quiroga as one of the sources of his concern about chain of custody of physical evidence in the Mason City Police Department, and the court was, admittedly, disturbed by the evidence of slipshod handling of physical evidence in that police department. Nevertheless, Marcos-Quiroga has offered nothing so far but speculation that any evidence in his case was subject to similar slipshod handling. That speculation is far from sufficient to overcome the presumption of integrity of physical evidence relied on in *Chapman* and other cases cited above. Moreover, in *Chapman* and *Lothbridge*, the court made clear that the specific circumstances had to be taken into consideration to determine whether or not the chain of custody has been so disrupted as to overcome the presumption of integrity, including the government's explanation of any alteration of the evidence. Thus, the determination is fact-driven, and speculation is not

11

enough. Here, the court finds Marcos-Quiroga's speculation insufficient to warrant either exclusion of the evidence or a pretrial evidentiary hearing on the admissibility of the evidence. Finally, while the court does not eagerly embrace such a notion, the Eighth Circuit Court of Appeals has suggested that defects in the chain of custody go more to the weight of the affected evidence than to its admissibility. *Briley*, 319 F.3d at 363. Thus, if evidence develops raising questions about the chain of custody of the physical evidence in this case, the remedy may not be exclusion of the evidence, but an instruction pursuant to *Briley* placing the weight to be given such evidence in the hands of the jury.

At this point, however, the part of Marcos-Quiroga's Motion In Limine seeking to exclude physical evidence or to require a pretrial evidentiary hearing on the admissibility of physical evidence will be denied.

### C. The Plea Agreement

#### 1.    The challenged evidence

As noted above, Marcos-Quiroga entered into a "non-cooperation" plea agreement and actually entered a guilty plea to the charged offense in this case, but then the court allowed him to withdraw his guilty plea owing to ineffective assistance of counsel in the determination of the applicability of a career offender guidelines sentence enhancement. Marcos-Quiroga now seeks to exclude any evidence regarding the plea agreement on which he entered his now withdrawn guilty plea. As the government points out, however, the plea agreement that Marcos-Quiroga entered into before withdrawing his plea included the following waiver:

> If the defendant violates any term or condition of this plea agreement, in any respect, the entire agreement will be deemed to have been breached and may be rendered null and void by the United States. The defendant understands, however, that

12

the government may elect to proceed with the guilty plea and sentencing. These decisions shall be in the sole discretion of the United States. *If the defendant does breach this agreement, he faces the following consequences: (1) all testimony and other information he has provided at any time to attorneys, employees or law enforcement officers of the government, to the court, or to the federal grand jury, may and will be used against him in any prosecution or proceeding;* (2) the United States will be entitled to reinstate previously dismissed charges and/or pursue additional charges against the defendant and to use any information obtained directly or indirectly from the defendant in those additional prosecutions; and (3) the United States will be released from any obligations, agreements or restrictions imposed upon it under this plea agreement.

Government's Resistance To Motion In Limine, Exhibit 1 (Plea Agreement, ¶ 18) (emphasis added).

### 2. *Arguments of the parties*

Marcos-Quiroga argues that his prior plea agreement should be excluded pursuant to Rule 410 of the Federal Rules of Evidence. He argues that the exclusion extends to any statements made in the course of plea negotiations. Here, where the court allowed him to withdraw his guilty plea and "start anew," he contends that the court should not allow the government to present any evidence regarding the prior plea agreement or the withdrawn plea, including specifically the stipulation of facts made a part of the plea agreement and forming the basis for the now withdrawn guilty plea.

The government, however, argues that Marcos-Quiroga's prior plea agreement in this case is admissible, including Marcos-Quiroga's admissions therein of committing the charged offense. The government points out that Marcos-Quiroga expressly waived any rights under Rule 11 of the Federal Rules of Criminal Procedure or Rule 410 of the

13

Federal Rules of Evidence. Moreover, the government contends that such rights are statutory, not fundamental constitutional rights, and, as such, are presumptively waivable. Absent some affirmative indication that the agreement was entered into unknowingly or involuntarily, the government argues that Marcos-Quiroga's agreement to waive the exclusionary provisions of the two rules is valid and enforceable. The government argues, further, that the waiver extends to the government's use of the plea agreement in its case-in-chief, not merely for impeachment purposes. Here, the government asserts that Marcos-Quiroga entered into the plea agreement, with advice of counsel, knowing that it contained the express waiver on which the government now relies, then breached the plea agreement by withdrawing his guilty plea. The government points out that the Eighth Circuit Court of Appeals has upheld the specific language of the waiver in the plea agreement at issue here.

### 3. *Analysis*

Rule 410 of the Federal Rules of Evidence provides as follows:

> Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
>> **(1)** a plea of guilty which was later withdrawn;
>> **(2)** a plea of nolo contendere;
>> **(3)** any statement made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure or comparable state procedure regarding either of the foregoing pleas; or
>> **(4)** any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.
> However, such a statement is admissible (i) in any proceeding wherein another statement made in the course of the same plea

14

> or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it, or (ii) in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record and in the presence of counsel.

FED. R. EVID. 410. Rule 11 of the Federal Rules of Criminal Procedure was amended in 2002 to provide, in pertinent part, as follows:

> **(f) Admissibility or Inadmissibility of a Plea, Plea Discussions, and Related Statements**. The admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410.

FED. R. EVID. 11(f) (2002).[1] Thus, Rule 410 is the focus of the current analysis.[2]

---

[1] Former Rule 11(e)(6) of the Federal Rules of Criminal Procedure provided as follows:

> [E]vidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
>
> > (A) a plea of guilty which was later withdrawn;
> >
> > (B) a plea of nolo contendere;
> >
> > (C) any statement made in the course of any proceedings under this rule regarding either of the foregoing pleas; or
> >
> > (D) any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

FED. R. EVID. 11(e)(6) (1999). The Eighth Circuit Court of Appeals observed that this provision was "substantively similar" to Rule 410 of the Federal Rules of Evidence.

[2] The Eighth Circuit Court of Appeals has explained,

> The plain language of Rule 410 excludes "only those statements which are made in the course of plea discussions."
> *United States v. Hare*, 49 F.3d 447, 450 (8th Cir. 1995)

(continued...)

15

When a plea agreement provides a waiver of the protections of Rule 410 if the plea agreement is breached, the question for the court is "whether [the] defendant has knowingly and voluntarily waived rights in a plea agreement." *United States v. Swick*, 262 F.3d 684, 686 (8th Cir. 2001). Thus, "'[a]bsent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable.'" *Id.* (quoting *United States v. Young*, 223 F.3d 905, 909-10 (8th Cir. 2000), *cert. denied*, 531 U.S. 1168 (2001)). In *Swick*, the Eighth Circuit Court of Appeals found that the defendant could not make the necessary showing to overcome his waiver of Rule 410 rights, where he had entered into a plea agreement containing such a waiver, pleaded guilty, but subsequently was allowed to withdraw his guilty plea. *Id.* at 685-86. The court explained its conclusion, as follows:

> The government asserts that Swick knowingly and voluntarily entered into a plea agreement which contained a valid waiver of his right to exclude evidence obtained in the course of plea negotiations. We agree. The plea agreement

---

[2](...continued)

> (internal quotations and citation omitted). Statements voluntarily offered either before any plea negotiation has begun or after a plea agreement has been reached cannot be considered statements made 'in the course of plea discussions' within the meaning of the exclusionary rules. *Id.* We look to the specific facts of each case and the totality of the circumstances to determine whether the defendant's statements were made "in the course of plea discussions." *Id.* at 451.

*United States v. Edelmann*, 458 F.3d 791, 804 (8th Cir. 2006). The court does not believe that there is any dispute that the statements that Marcos-Quiroga seeks to exclude fall within the protections of Rule 410. Rather, the issue is whether Marcos-Quiroga has waived Rule 410's protections.

16

explicitly informed Swick that if he breached the agreement, all testimony or information he provided at any time would be used against him. Swick clearly stated in the plea agreement and at the hearing that he understood all of the provisions of the plea agreement, including the consequences of breaching the agreement. He acknowledged that no one tried to push him into or talk him into signing the plea agreement, and that he was pleading guilty of his own free will. The district court accepted his guilty plea and initially found that the plea was knowing and voluntary.

We are not persuaded by Swick's assertion that because he was under pressure to accept the plea agreement or be forced to go to trial and face severe consequences, his plea was involuntary. All defendants in plea negotiations struggle with the issue of whether to plead guilty or to take their chances at trial. There is nothing in the record to indicate that Swick's situation was that different from any other ordinary defendant, or that he was under any greater pressure than any other defendant who is weighing the option of pleading guilty or going to trial. Other than his conclusory statements, Swick has not provided an affirmative indication that his plea was unknowing or involuntary, and therefore, we hold that his agreement to waive the exclusionary provisions of the plea-statement rules is enforceable.

*Swick*, 262 F.3d at 686-87. The Eighth Circuit Court of Appeals subsequently held, on Swick's motion to set aside his sentence pursuant to 28 U.S.C. § 2255, that a plea agreement that contained precisely the same language as the italicized portion of Marcos-Quiroga's plea agreement quoted above adequately informed Swick of the government's ability and intent to use statements made in or pursuant to the plea agreement if he subsequently withdrew his guilty plea, at least where the record showed that trial counsel had reviewed the plea agreement several times with Swick and had advised him not to initial any paragraph that he did not understand, Swick acknowledged that he had read and

17

understood the pertinent paragraph, and he had discussed the case and his rights with his attorney. *Swick v. United States*, 186 Fed. Appx. 717, 719-20 (8th Cir. 2006) (unpublished op.).

The court cannot find that there is any real question as to whether Marcos-Quiroga's waiver of the protections of Rule 410 in his plea agreement was knowing and voluntary or that he later breached that plea agreement by withdrawing his guilty plea. *See Swick*, 262 F.3d at 686 (the question is "whether [the] defendant has knowingly and voluntarily waived rights in a plea agreement").[3] In allowing Marcos-Quiroga to withdraw his guilty plea, the court found that his guilty plea was not "knowing" or "voluntary" only to the extent that he was not provided by counsel with a realistic understanding of the relative risks of pleading guilty or going to trial, where counsel failed to advise him correctly about his exposure to a sentencing enhancement as a career criminal. *See Marcos-Quiroga*, 478 F. Supp. 2d at 1136. The court did not find or suggest that counsel's advice concerning the effect of provisions of the plea agreement, such as the waiver of Rule 410 rights, resulted in a plea that was not knowing or voluntary. Indeed, the court accepted the report and recommendation concerning Marcos-Quiroga's guilty plea, *see* Order of

---

[3]The court is troubled by the apparent assumption of the appellate courts that moving to withdraw a guilty plea is a breach of the plea agreement, triggering the clause waiving Rule 410 rights. The court says apparent assumption, because there is no explanation whatsoever in *Swick*, for example, of how or why moving to withdraw a guilty plea violates a plea agreement. After all, when a party to a contract moves for declaratory judgment in a civil action to determine whether the contract is enforceable, that action is not construed to be a breach of the contract. Although deeply troubled by the assumption that moving to withdraw a guilty plea is a breach of a plea agreement, the court feels constrained by the decision in *Swick* to conclude that Marcos-Quiroga breached the plea agreement by moving to withdraw his guilty plea—because the Eighth Circuit Court of Appeals found that Swick had breached his plea agreement by moving to withdraw his guilty plea—thereby triggering the clause waiving his Rule 410 rights.

18

November 13, 2006 (docket no. 31), and found no basis on which to find that the plea agreement had been entered into without adequate advice of counsel or that Marcos-Quiroga otherwise did not understand the provisions of his plea agreement, including the waivers of rights therein. *Cf. Swick*, 262 F.3d at 686 (considering similar evidence showed a waiver of rights was knowing and voluntary). Moreover, the sufficiency of the waiver provision in Marcos-Quiroga's plea agreement appears to be settled by *Swick*, 186 Fed. Appx. at 719-20, which upheld an identical provision for waiver of Rule 410 rights. Although Marcos-Quiroga may have felt considerable pressure to plead guilty, and indeed, even though this court found that Marcos-Quiroga would not have pleaded guilty but for counsel's incorrect advice about his possible exposure to a career offender enhancement, *see Marcos-Quiroga*, 478 F. Supp. 2d at 1118 & 1131, the court cannot characterize Marcos-Quiroga's situation as "that different from any other ordinary defendant, or that he was under any greater pressure than any other defendant who is weighing the option of pleading guilty or going to trial." *Swick*, 262 F.3d at 687. To put it another way, the court cannot find that prior counsel's error, which infected the knowingness and voluntariness of Marcos-Quiroga's guilty plea, also infected the knowingness and voluntariness of Marcos-Quiroga's waiver of Rule 410 rights under the plea agreement.

Marcos-Quiroga relies, however, on the court's holding that he should be allowed to "start anew" upon withdrawal of his guilty plea. *See Marcos-Quiroga*, 478 F. Supp. 2d at 1144 ("Upon reconsideration, Marcos-Quiroga's January 8, 2007, Motion To Withdraw Plea Of Guilty [And] Alternative Motion For Deviation Or Departure At Time Of Sentencing (docket no. 32) will be granted to the extent that Marcos-Quiroga will be allowed to withdraw his guilty plea entered on October 25, 2006, and start anew."). The court allowed Marcos-Quiroga to "start anew" in the sense that he was allowed to withdraw his guilty plea and reassess whether or not to plead guilty or go to trial in light

19

of the probability—indeed, virtual certainty—that he *would* be subject to a career offender sentencing enhancement. The court was not asked to void Marcos-Quiroga's plea agreement or otherwise to rule on the validity of any waiver of rights therein when presented with his request to withdraw his guilty plea. Although the court held that, but for counsel's incorrect advice about Marcos-Quiroga's possible exposure to a career offender enhancement, Marcos-Quiroga would not have pleaded guilty, *see Marcos-Quiroga*, 478 F. Supp. 2d at 1118 & 1131, that holding does not necessarily mean that counsel's error is the sole reason that Marcos-Quiroga entered into the plea agreement. Marcos-Quiroga always had the option to plead guilty "straight up," *i.e.,* without any plea agreement, thereby avoiding the waiver provisions of the plea agreement.

Therefore, the part of Marcos-Quiroga's Motion In Limine seeking to exclude his plea agreement entered into prior to withdrawal of his guilty plea will be denied.

### III.  CONCLUSION

Upon the foregoing, Marcos-Quiroga's May 29, 2007, Motion In Limine (docket no. 51) is **granted in part and denied in part**, as follows:

1.      That part of the motion seeking to exclude evidence of prior convictions identified as (3) through (22) therein is **granted**, but that part of the motion seeking to exclude evidence of prior convictions identified as (1) and (2) therein is **denied**;

2.      That part of the motion seeking to exclude physical evidence or to require a pretrial evidentiary hearing on the admissibility of physical evidence is **denied**;

Case 3:06-cr-03009-MWB   Document 65   Filed 06/12/07   Page 20 of 21

3.    That part of the motion seeking to exclude Marcos-Quiroga's plea agreement entered into prior to withdrawal of his guilty plea is **denied**.

**IT IS SO ORDERED.**

**DATED** this 12th day of June, 2007.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA