# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR06-3009-MWB |
| vs. | **REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS, AND ORDER ON PENDING MOTIONS** |
| FRANCISCO MARCOS QUIROGA, | |
| Defendant. | |

_____

On March 22, 2006, the grand jury handed down a one-count Indictment charging the defendant Francisco Marcos Quiroga with possession of five grams or more of pure methamphetamine with intent to distribute, within 1,000 feet of a playground, after Quiroga previously had been convicted of a felony drug offense.  (Doc. No. 2)  Quiroga entered a guilty plea on November 13, 2006.   On March 23, 2007, the Honorable Mark W. Bennett allowed Quiroga to withdraw his guilty plea.  (Doc. No. 45)

On May 29, 2007, Quiroga filed a motion to suppress evidence.  (Doc. No. 52) The undersigned struck the motion as untimely.  (Doc. No. 53)  On March 30, 2007, Quiroga filed a motion for leave to file his motion to suppress out of time.  (Doc. No. 54) The court granted the motion for the limited purpose of making a record, and scheduled an evidentiary hearing on both the motion to suppress and the motion for leave to file the motion to suppress out of time.  (Doc. No. 56)  The plaintiff (the "Government") resisted the motion to suppress (Doc. No. 57), but has not resisted Quiroga's request to file the motion to suppress out of time.  The motion for leave to file a motion to suppress out of time (Doc. No. 54) is **granted**.

On June 7, 2007, Quiroga filed a motion (Doc. No. 59) asking the court to direct the Government to produce the drug evidence in this case for independent testing. The Government resisted the motion (Doc. No. 61), and Quiroga filed a reply (Doc. No. 62). The undersigned scheduled a hearing on the discovery motion to occur concurrently with the hearing on the suppression motion. (*See* Doc. No. 60) The discovery motion (Doc. No. 59) is **denied**, without prejudice to reassertion if the parties are unable to agree upon a procedure and appropriate waivers to accomplish the independent testing.

The undersigned held a hearing on the motion to suppress on June 11, 2007. Quiroga appeared in person with his attorney, Chad Primmer. The Government was represented by Assistant U.S. Attorney C.J. Williams. The Government offered the testimony of Mason City Police officers Lane Siefken and Jason Stiles. Two exhibits were admitted into evidence, to-wit: **Gov't Ex. 1** - a drawing showing the general area where officers first encountered Quiroga, and where he later was arrested; and **Def. Ex. A** - a photograph looking south from the area where Quiroga was arrested.[1]

The court finds the motion to suppress is fully submitted and ripe for decision.

## *DISCUSSION*

On September 21, 2005, Quiroga and his girlfriend, Jill Hjelle, were living in an apartment on 3rd Street, N.E. in Mason City, Iowa (the "apartment"). The apartment is located on the north side of 3rd Street N.E. A driveway extends north from 3rd Street on the west side of the apartment, and a house is located on the west side of the driveway. Behind the apartment, to the north, is a detached garage. To the east of the apartment is a vacant lot. An east-west fence runs behind the garage and across the vacant lot. A north-south fence meets the east-west fence at a point opposite the northeast corner of the

---

[1]Def. Ex. A actually contains two photographs. Only the photograph on the bottom of the page is relevant to this inquiry.

garage, and a gate in the fence at that point allows access to neighboring property behind the garage. On the east side of the north-south fence and the north side of the east-west fence is a wooded, overgrown area. Across 3rd Street N.E. from the apartment, on the south side of the street, is the residence of Jerry Graney. (*See* Gov't Ex. 1) From the vantage point of the northeast corner of the garage behind the apartment, it is possible to look south and see much of Graney's residence, although the view is obstructed in part by a large tree at the front of the apartment. (*See* Def. Ex. A)

On the date in question, Quiroga and Hjelle got into a heated argument that escalated to the point that a neighbor called the police to report hearing a woman screaming behind the apartment. Officers Siefken and Stiles were on patrol, separately, in Mason City, Iowa. Both were dispatched to the apartment in response to the domestic disturbance call. The officers arrived at the scene simultaneously. They both parked their vehicles on the south side of 3rd Street N.E., across the street from the apartment. As they got out of their vehicles, the officers heard yelling and arguing coming from the rear of the apartment. Officer Stiles saw a man, later identified as Quiroga, run to the east, behind the apartment building. Officer Siefken also had seen Quiroga as he drove up. After Quiroga went behind the apartment, neither officer could see him until they reached the rear of the building. When they arrived at the rear of the apartment, Quiroga was at the northeast corner of the apartment, in front of the garage.

The officers ascertained that the argument was between Quiroga and Hjelle, both of whom lived at the apartment. Hjelle's mother, Nancy, also was present. No other people were present at the scene. Hjelle was very agitated, while Quiroga appeared to be more calm, although he was sweating profusely.[2] Quiroga stated he had lost his temper during the argument and had smashed a window in a red Ford Thunderbird vehicle. He

---

[2]Stiles testified the weather was very hot that day, and he assumed Quiroga was sweating profusely due to the heat.

3

also had broken the window to the door of the apartment. The officers separated Quiroga and Hjelle and talked with them individually. Officer Stiles recalls seeing a large speaker sitting outside the apartment building. The officers were able to diffuse the situation by talking with the parties, and no arrests were made or citations were issued. At at some point, Nancy and Quiroga both left the scene, in separate vehicles.

After Quiroga and Nancy had left the scene, the officers began walking back toward their patrol cars. As they neared 3rd Street, Graney called them over. Graney's demeanor was that of a normal citizen on the street; he was not agitated in any way. Graney stated that when the officers pulled up to the apartment, he had observed a man run to the northeast corner of the garage, next to the gate, and appear to drop something over the fence. Graney did not know the name of the man he had seen, but he identified the individual as the same man to whom the officers had been speaking. Quiroga was the only man at the apartment during the incident, and the officers concluded Quiroga was the man Graney had seen at the fence. Neither officer recalled the large tree in front of the apartment as shown in Def. Ex. A, but both officers testified they had a clear view of the garage's northeast corner and the gate from Graney's residence.

The officers walked to the area Graney had pointed out. When they reached the northeast corner of the garage, Stiles opened the gate, which opens to the north, and stepped into the adjacent yard. Next to the gate opening, on the opposite side of the fence from the apartment, the officers observed a clear plastic bag lying on the ground. Visible inside the bag were some jewelry, a small quantity of cash, a lighter, and a second clear plastic bag containing a large quantity of a white substance.[3] Based on their training and experience, the officers believed the white substance to be drugs, most likely methamphetamine.

---

[3]Stiles indicated the two clear plastic bags were separate, lying one on top of the other, while Siefken testified the bag containing the white substance was inside the other bag. The court finds the factual discrepancy to be irrelevant for purposes of the present motion.

4

Stiles is a K-9 handler and he had his dog with him in his patrol car. Siefken waited at the location of the plastic bag while Stiles retrieved his K-9 from his vehicle. When Siefken reached approximately the southeast corner of the garage, he gave his dog the "open area" command to search for drugs. The dog indicated on the plastic bag, signifying the presence of drugs. The officers expected that someone would return to retrieve the bag. Stiles put his dog back on its leash, and he and the dog waited behind the garage, expecting that whoever came to retrieve the bag would do so from the south. Stiles stated both the yard in which he and his dog were hiding and the heavily overgrown yard to the east belonged to private residences and were fenced. Siefken returned to his patrol car and began patrolling the area near the apartment.

Three to five minutes after Siefken left the apartment, Stiles saw Quiroga approaching from the north, through the heavily wooded yard. Stiles realized Quiroga would see him and his dog when Quiroga got closer to the gate, so Stiles made his presence known when Quiroga was about fifteen feet from the gate where the bag was located. Stiles asked Quiroga what he was doing, and Quiroga responded that he had returned to pick up a speaker. Stiles asked why Quiroga had not parked out front, in the driveway, but Quiroga did not answer. Stiles noted there was nothing in the driveway that would have blocked Quiroga from using it. Siefken testified he had been patrolling on 3rd Street N.E., and Quiroga had not returned to the apartment via 3rd Street.

Stiles directed Quiroga to hop over the north-south fence and come to the officer's location. Quiroga complied, and Stiles arrested Quiroga and placed him in handcuffs. He patted Quiroga down but did not perform a complete search of Quiroga's person at that time. He radioed Siefken, who returned to the scene and performed a pat-down search of

5

Quiroga incident to the arrest. At some point, approximately $3,500 in cash was discovered on Quiroga's person.[4]

Quiroga seeks to suppress the currency found on his person on the grounds that the officers lacked probable cause to arrest him. He argues his conduct did not give rise to a reasonable suspicion of criminal activity, noting he only came within fifteen feet of the bag containing the suspected controlled substance. Quiroga argues his "desire to avoid further altercation with his girlfriend [was] clearly understandable and explains his 'circuitous route' to the residence." (Doc. No. 52-2, p. 3) The Government resists, arguing the officers had probable cause to arrest Quiroga even before he returned to the scene where the bag had been dropped. (*See* Doc. No. 57, p. 4)

The court finds that although Quiroga has raised several factual issues for trial, he has failed to show the officers lacked probable cause to arrest him. "To find probable cause to make a warrantless arrest, the facts and circumstances within the officers' knowledge must be sufficient to justify a reasonably prudent person's belief that the suspect has committed or is committing an offense." *United States v. Roberson*, 439 F.3d 934, 939 (8th Cir. 2006) (citing *United States v. Morgan*, 997 F.2d 433, 435 (8th Cir. 1993)). The time period relevant to the inquiry is "the moment the arrest was made." *United States v. Castro-Gaxiola*, 479 F.3d 579, 584 (8th Cir. 2007). The court looks at the totality of the circumstances and gives "due weight to the inferences that can be drawn from the officers' experience" in its review of the officers' determination of probable cause. *Roberson*, 439 F.3d at 939 (citing *United States v. Wilson*, 964 F.2d 807, 809 (8th Cir. 1992)); *Castro-Gaxiola*, 479 F.3d at 584 (8th Cir. 2007).

Although "'[m]ere presence at the scene of a crime is not probable cause for a warrantless arrest,'" *Castro-Gaxiola*, 479 F.3d at 583 (quoting *United States v. Luschen*,

---

[4]The testimony is not clear as to whether the currency was discovered during Siefken's search of Quiroga, or during a later search at the jail. The court finds the distinction irrelevant to the present inquiry.

614 F.2d 1164, 1171 (8th Cir. 1980)); *United States v. McGlynn*, 671 F.2d 1140, 1145 (8th Cir. 1982), "[p]robable cause to arrest exists when an officer personally knows or has been reliably informed of sufficient facts to warrant his belief that a crime has been committed and that the person who is to be arrested committed it." *United States v. Luschen*, 614 F.21d 1164, 1171 (8th Cir. 1980) (citations omitted).

In this case, Quiroga was not arrested simply because of his presence near the location where the bag was found. When the officers arrived at the scene, Quiroga quickly ran out of sight between the apartment and the garage, in the direction of the area where the bag was found. An objective observer saw a man matching Quiroga's description run to the gate and drop something over the fence. Other than the officers, Quiroga was the only man present at the scene at the time. Just minutes later, the officers walked to the area and located a bag containing suspected controlled substances. A drug dog indicated on the package, supporting the officers' suspicion that the white substance in the bag was drugs. The officers maintained surveillance until Quiroga appeared, approaching the area where the bag had been dropped. Quiroga approached through a heavily wooded and overgrown area in a fenced yard. The court finds the facts known to the officers at the time were more than adequate to establish probable cause to arrest Quiroga. As a result, the money on his person was found during a lawful search incident to his arrest, and it need not be suppressed.

The undersigned therefore respectfully recommends that Quiroga's motion to suppress be **denied**. Any party who objects to this report and recommendation must serve and file specific, written objections by **June 19, 2007**. Any response to the objections must be served and filed by **June 22, 2007.**

IMPORTANT NOTE: Any party planning to lodge any objection to this report and recommendation must order a transcript of the hearing promptly, but not later than three court days after the date of this order, **<u>regardless of whether the party believes</u>**

7

**a transcript is necessary to argue the objection**.  If an attorney files an objection to this report and recommendation without having ordered the transcript as required by this order, the court may impose sanctions on the attorney.

      **IT IS SO ORDERED.**

      **DATED** this 13th day of June, 2007.

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

8