**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 06-3009-MWB |
| Plaintiff, | |
| vs. | ORDER REGARDING MAGISTRATE'S REPORT AND RECOMMENDATION CONCERNING DEFENDANT'S MOTION TO SUPPRESS |
| FRANCISCO MARCOS-QUIROGA, | |
| Defendant. | |

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A.  Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B.  Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.  LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    *A.  Standard Of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    *B.  Objections To Findings Of Fact* . . . . . . . . . . . . . . . . . . . . . . . 7
        *1.  Officer Stiles's observation* . . . . . . . . . . . . . . . . . . . . 7
        *2.  Defendant Quiroga's path* . . . . . . . . . . . . . . . . . . . . . 8
        *3.  Neighbor's observation* . . . . . . . . . . . . . . . . . . . . . . 8
    *C.  Objection To Conclusions Of Law* . . . . . . . . . . . . . . . . . . . . 10

*III.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## I. INTRODUCTION

### A. Procedural Background

In an Indictment handed down March 22, 2006, defendant Francisco Marcos-Quiroga was charged with possessing, with intent to distribute, 5 grams or more of actual (pure) methamphetamine within 1,000 feet of a playground after having previously been convicted of a felony drug-trafficking offense. On May 29, 2007, defendant Quiroga filed a motion to suppress. In his motion, defendant Quiroga seeks to suppress evidence seized from his person following his arrest. Defendant Quiroga asserts that the police did not have probable cause to arrest him and therefore all evidence obtained from the police's subsequent search of his person must be suppressed as the fruits of an illegal search. The government filed a timely resistance to defendant Quiroga's motion.

Defendant Quiroga's motion to suppress was referred to Chief United States Magistrate Judge Paul A. Zoss, pursuant to 28 U.S.C. § 636(b). Judge Zoss conducted an evidentiary hearing and then filed a Report and Recommendation in which he recommends that defendant Quiroga's motion to suppress be denied. Judge Zoss concluded that the police had probable cause to arrest defendant Quiroga and, as a result, the money found on his person was found during a lawful search incident to his arrest. Thus, Judge Zoss concluded that the money found on defendant Quiroga's person need not be suppressed. Therefore, Judge Zoss recommended that defendant Quiroga's motion to suppress be denied. Defendant Quiroga has filed objections to Judge Zoss's Report and Recommendation. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Quiroga's motion to suppress.

### B. Factual Background

In his Report and Recommendation, Judge Zoss made the following findings of fact:

2

On September 21, 2005, Quiroga and his girlfriend, Jill Hjelle, were living in an apartment on 3rd Street, N.E. in Mason City, Iowa (the "apartment"). The apartment is located on the north side of 3rd Street N.E. A driveway extends north from 3rd Street on the west side of the apartment, and a house is located on the west side of the driveway. Behind the apartment, to the north, is a detached garage. To the east of the apartment is a vacant lot. An east-west fence runs behind the garage and across the vacant lot. A north-south fence meets the east-west fence at a point opposite the northeast corner of the garage, and a gate in the fence at that point allows access to neighboring property behind the garage. On the east side of the north-south fence and the north side of the east-west fence is a wooded, overgrown area. Across 3rd Street N.E. from the apartment, on the south side of the street, is the residence of Jerry Graney. (*See* Gov't Ex. 1) From the vantage point of the northeast corner of the garage behind the apartment, it is possible to look south and see much of Graney's residence, although the view is obstructed in part by a large tree at the front of the apartment. (*See* Defendant. Ex. A)

On the date in question, Quiroga and Hjelle got into a heated argument that escalated to the point that a neighbor called the police to report hearing a woman screaming behind the apartment. Officers Siefken and Stiles were on patrol, separately, in Mason City, Iowa. Both were dispatched to the apartment in response to the domestic disturbance call. The officers arrived at the scene simultaneously. They both parked their vehicles on the south side of 3rd Street N.E., across the street from the apartment. As they got out of their vehicles, the officers heard yelling and arguing coming from the rear of the apartment. Officer Stiles saw a man, later identified as Quiroga, run to the east, behind the apartment building. Officer Siefken also had seen Quiroga as he drove up. After Quiroga went behind the apartment, neither officer could see

3

him until they reached the rear of the building. When they arrived at the rear of the apartment, Quiroga was at the northeast corner of the apartment, in front of the garage.

The officers ascertained that the argument was between Quiroga and Hjelle, both of whom lived at the apartment. Hjelle's mother, Nancy, also was present. No other people were present at the scene. Hjelle was very agitated, while Quiroga appeared to be more calm, although he was sweating profusely. Quiroga stated he had lost his temper during the argument and had smashed a window in a red Ford Thunderbird vehicle. He also had broken the window to the door of the apartment. The officers separated Quiroga and Hjelle and talked with them individually. Officer Stiles recalls seeing a large speaker sitting outside the apartment building. The officers were able to diffuse the situation by talking with the parties, and no arrests were made or citations were issued. At some point, Nancy and Quiroga both left the scene, in separate vehicles.

After Quiroga and Nancy had left the scene, the officers began walking back toward their patrol cars. As they neared 3rd Street, Graney called them over. Graney's demeanor was that of a normal citizen on the street; he was not agitated in any way. Graney stated that when the officers pulled up to the apartment, he had observed a man run to the northeast corner of the garage, next to the gate, and appear to drop something over the fence. Graney did not know the name of the man he had seen, but he identified the individual as the same man to whom the officers had been speaking. Quiroga was the only man at the apartment during the incident, and the officers concluded Quiroga was the man Graney had seen at the fence. Neither officer recalled the large tree in front of the apartment as shown in Defendant Ex. A, but both officers testified they had a clear view of the garage's northeast corner and the gate from Graney's residence.

4

Case 3:06-cr-03009-MWB   Document 78   Filed 07/17/07   Page 4 of 12

The officers walked to the area Graney had pointed out. When they reached the northeast corner of the garage, Stiles opened the gate, which opens to the north, and stepped into the adjacent yard. Next to the gate opening, on the opposite side of the fence from the apartment, the officers observed a clear plastic bag lying on the ground. Visible inside the bag were some jewelry, a small quantity of cash, a lighter, and a second clear plastic bag containing a large quantity of a white substance. Based on their training and experience, the officers believed the white substance to be drugs, most likely methamphetamine.

Stiles is a K-9 handler and he had his dog with him in his patrol car. Siefken waited at the location of the plastic bag while Stiles retrieved his K-9 from his vehicle. When Siefken reached approximately the southeast corner of the garage, he gave his dog the "open area" command to search for drugs. The dog indicated on the plastic bag, signifying the presence of drugs. The officers expected that someone would return to retrieve the bag. Stiles put his dog back on its leash, and he and the dog waited behind the garage, expecting that whoever came to retrieve the bag would do so from the south. Stiles stated both the yard in which he and his dog were hiding and the heavily overgrown yard to the east belonged to private residences and were fenced. Siefken returned to his patrol car and began patrolling the area near the apartment.

Three to five minutes after Siefken left the apartment, Stiles saw Quiroga approaching from the north, through the heavily wooded yard. Stiles realized Quiroga would see him and his dog when Quiroga got closer to the gate, so Stiles made his presence known when Quiroga was about fifteen feet from the gate where the bag was located. Stiles asked Quiroga what he was doing, and Quiroga responded that he had returned to pick up a speaker. Stiles asked why Quiroga had not parked out front, in the driveway, but Quiroga did not answer. Stiles noted there was nothing in the driveway that

5

would have blocked Quiroga from using it. Siefken testified he had been patrolling on 3rd Street N.E., and Quiroga had not returned to the apartment via 3rd Street.

Stiles directed Quiroga to hop over the north-south fence and come to the officer's location. Quiroga complied, and Stiles arrested Quiroga and placed him in handcuffs. He patted Quiroga down but did not perform a complete search of Quiroga's person at that time. He radioed Siefken, who returned to the scene and performed a pat-down search of Quiroga incident to the arrest. At some point, approximately $3,500 in cash was discovered on Quiroga's person.

Report and Recommendation at pp. 2-6 (footnotes omitted). Upon review of the record, the court adopts all of Judge Zoss's factual findings that have not been objected to by defendant Quiroga.

## II. LEGAL ANALYSIS

### A. *Standard Of Review*

Pursuant to statute, this court's standard of review for a magistrate judge's report and recommendation is as follows:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). Similarly, Federal Rule of Civil Procedure 72(b) provides for review of a magistrate judge's report and recommendation on dispositive motions and prisoner petitions, where objections are made, as follows:

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional

6

>    evidence, of any portion of the magistrate judge's disposition
>    to which specific written objection has been made in
>    accordance with this rule. The district judge may accept,
>    reject, or modify the recommended decision, receive further
>    evidence, or recommit the matter to the magistrate judge with
>    instructions.

FED. R. CIV. P. 72(b).

The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir.) (citing 28 U.S.C. § 636(b)(1)), *cert. denied*, 519 U.S. 860 (1996); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (citing *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994)); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995) (also citing *Belk*). As noted above, defendant Quiroga has filed objections to Judge Zoss's Report and Recommendation. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Quiroga's motion to suppress.

### *B. Objections To Findings Of Fact*

#### *1. Officer Stiles's observation*

Defendant Quiroga initially objects to Judge Zoss's finding that: "Officer Stiles saw a man, later identified as Quiroga, run to the east, behind the apartment building." Report and Recommendation at 3. This objection is overruled. Mason City Police Officer Jason Stiles testified:

> Q. And what did you observe him do when you first saw him there?
> A. He ran to the east.
> Q. And when you say to the east, are you saying behind the apartment building?

7

>     A. Yes.

Transcript at 28. Because Judge Zoss's finding is fully supported by the record, this objection is denied.[1]

### 2. *Defendant Quiroga's path*

Defendant Quiroga also objects to Judge Zoss's finding that: "When the officers arrived at the scene, Quiroga quickly ran out of sight between the apartment and the garage, in the direction of the area where the bag was found." Report and Recommendation at 7. Defendant Quiroga objects on the ground that the officers could not tell where Quiroga went upon their arrival at the scene. The flaw in defendant Quiroga's objection lies in the fact that Judge Zoss did not find that the officers stated that they could see where defendant Quiroga went when he ran behind the apartment building. Indeed, both officers testified that they lost sight of defendant Quiroga behind the apartment building. Transcript at 8, 28. Therefore, this objection is also denied.

### 3. *Neighbor's observation*

Defendant Quiroga further objects to Judge Zoss's finding that: "An objective observer saw a man matching Quiroga's description run to the gate and drop something over the fence." Report and Recommendation at 7. Defendant Quiroga argues that this finding is not supported by any evidence presented at the evidentiary hearing. Officer Siefken testified that:

>     Q. When you were heading back to your vehicles, were you approached by anybody?
>     A. Yes. A neighbor was standing in front of his house and waved us over to him.

---

[1] Mason City Police Officer Lane Siefken similarly testified that when he arrived on the scene he observed defendant Quiroga go behind the rear of the apartment building. Transcript at 8.

8

>     A. Yes.

Transcript at 28. Because Judge Zoss's finding is fully supported by the record, this objection is denied.[1]

### 2. *Defendant Quiroga's path*

Defendant Quiroga also objects to Judge Zoss's finding that: "When the officers arrived at the scene, Quiroga quickly ran out of sight between the apartment and the garage, in the direction of the area where the bag was found." Report and Recommendation at 7. Defendant Quiroga objects on the ground that the officers could not tell where Quiroga went upon their arrival at the scene. The flaw in defendant Quiroga's objection lies in the fact that Judge Zoss did not find that the officers stated that they could see where defendant Quiroga went when he ran behind the apartment building. Indeed, both officers testified that they lost sight of defendant Quiroga behind the apartment building. Transcript at 8, 28. Therefore, this objection is also denied.

### 3. *Neighbor's observation*

Defendant Quiroga further objects to Judge Zoss's finding that: "An objective observer saw a man matching Quiroga's description run to the gate and drop something over the fence." Report and Recommendation at 7. Defendant Quiroga argues that this finding is not supported by any evidence presented at the evidentiary hearing. Officer Siefken testified that:

>     Q. When you were heading back to your vehicles, were you approached by anybody?
>     A. Yes. A neighbor was standing in front of his house and waved us over to him.

---

[1] Mason City Police Officer Lane Siefken similarly testified that when he arrived on the scene he observed defendant Quiroga go behind the rear of the apartment building. Transcript at 8.

8

>           . . .
>       Q.  What happened when the neighbor approached you?
>       A.  When we went up to him, he told us that the male subject had gone around the garage and threw something over the fence.
>           . . .
>       Q.  Did the neighbor describe the person, the male that threw something over the fence?
>       A.  I guess I don't know if there was an actual description. I just know it was the subject that we were speaking to.

Transcript at 12. Officer Stiles's testimony corroborated that of Officer Siefken, testifying as follows:

>       A.  We began walking back over to our patrol cars and one of the neighbors from the south side of Third Street flagged us down.
>           . . .
>       Q.  What conversation did you have with that neighbor?
>       A.  He informed us that as we were pulling up, he observed the male run over to the northeast corner of the garage and drop something over a fence.
>       Q.  Did the neighbor describe the male he saw run over to that area?
>       A.  He did, but I can't remember exactly what – how he described him.
>       Q.  Was there any other male around the apartment building at the time that the neighbor is telling you this male ran over to the fence area?
>       A.  No, there was not.

Transcript at 30. Thus, it is clear from the testimony of Officers Stiles and Siefken that the neighbor told them that he observed the male they had been talking to, defendant Quiroga, toss something over the fence when the officers arrived on the scene. Therefore, because the record supports Judge Zoss's finding, this objection is also denied.

9

### C. Objection To Conclusions Of Law

Defendant Quiroga objects to Judge Zoss's conclusion that the facts know to the officers at the time were sufficient to establish probable cause to arrest him. He further objects to Judge Zoss's related conclusion that the money found on defendant Quiroga's person resulted from a lawful search incident to his arrest and therefore need not be suppressed.

In determining whether probable cause exists to make a warrantless arrest, a court must consider whether, based on the totality of the circumstances, the facts would lead a reasonable person to believe that the individual arrested has committed or is committing an offense. *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *United States v. Torres-Lona*, ---F.3d---, 2007 WL 1891817, at *4 (8th Cir. July 3, 2007); *United States v. Castro-Gaxiola*, 479 F.3d 579, 584 (8th Cir. 2007); *United States v. Martinez*, 462 F.3d 903, 908 (8th Cir. 2006), *cert. denied*, 127 S. Ct. 1502 (2007) ; *Engesser v. Dooley*, 457 F.3d 731, 740 (8th Cir. 2006), *cert. denied*, 127 S. Ct. 1284 (2007); *United States v. Roberson*, 439 F.3d 934, 939 (8th Cir.), *cert. denied*, 127 S. Ct. 409 (2006); *United States v. Zavala*, 427 F.3d 562, 565 (8th Cir. 2005); *United States v. Mendoza*, 421 F.3d 663, 667 (8th Cir. 2005), *cert. denied*, 126 S. Ct. 1804 (2006); *United States v. Kelly*, 329 F.3d 624, 628 (8th Cir. 2003); *United States v. Oropesa*, 316 F.3d 762, 768 (8th Cir. 2003). In reviewing a law enforcement officer's determination of probable cause, the court must "give due weight to the inferences that can be drawn from the officers' experience." *Robertson*, 439 F.3d at 939 (citing *United States v. Wilson*, 964 F.2d 807, 809 (8th Cir. 1992)); *Mendoza*, 421 F.3d at 667 ("In determining whether probable cause exists, we recognize that the police possess specialized law enforcement experience and thus may 'draw reasonable inferences of criminal activity from circumstances which the general public may find innocuous.'") (quoting *United States v. Caves*, 890 F.2d 87, 93 (8th Cir. 1989)). Moreover, the Eighth

Circuit Court of Appeals has instructed that: "[t]here need only be a 'probability or substantial chance of criminal activity, rather than an actual showing of criminal activity.'" *Torres-Lona*, ---F.3d---, 2007 WL 1891817, at *4 (quoting *United States v. Mendoza*, 421 F.3d 663, 667 (8th Cir. 2005)).

Here, considering the totality of the circumstances, a reasonable view of the evidence supports Judge Zoss's determination of probable cause to arrest defendant Quiroga. When Officers Siefken and Stiles arrived at the scene of the disturbance, both officers saw Quiroga quickly heading in the direction of the area where the bag was subsequently found. Other than the two male police officers, Quiroga was the only man present at the scene of the disturbance. Immediately after Quiroga left and as the officers were preparing to leave, a neighbor approached the officers and told them that he had seen the man who they had just been speaking with run to the gate and drop something over the fence. The officers immediately investigated this suspicious behavior by walking to the area and locating a bag containing suspected controlled substances. The officers sought to substantiate their belief that the bag contained drugs by have a drug dog conduct a drug sniff of the package. The drug dog alerted to the package, thereby supporting the officers' suspicion that the white substance in the bag was some form of an illegal drug. After setting up surveillance of the bag, Quiroga subsequently reappeared on the scene and approached the location of the bag. However, Quiroga did not approach the scene via the street but, instead, surreptitiously approached through a heavily wooded and overgrown area. From the totality of the circumstances, the officers could reasonably conclude that defendant Quiroga was returning to the scene to retrieve the bag containing the drugs. As such, the court concludes that the totality of the circumstances known to the officers at the time were sufficient to establish probable cause to arrest Quiroga. Having lawfully arrested defendant Quiroga, the officers had authority to search defendant Quiroga incident

11

to that arrest. *See United States v. Robinson*, 414 U.S. 218, 235 (1973); *Torres-Lona*, ---F.3d---, 2007 WL 1891817, at *5; *Mendoza*, 421 F.3d at 667-68. Therefore, the money found on defendant Quiroga's person during that search incident to his arrest was not seized in violation of the Fourth Amendment. Accordingly, the court overrules this objection to Judge Zoss's Report and Recommendation

### III. CONCLUSION

Therefore, for the reasons set forth above, the court, upon a *de novo* review of the record, accepts Judge Zoss's Report and Recommendation and **denies** defendant Quiroga's motion to suppress.

**IT IS SO ORDERED.**

**DATED** this 16th day of July, 2007.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

12

Case 3:06-cr-03009-MWB   Document 78   Filed 07/17/07   Page 12 of 12